THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL SIDES, Defendant-Appellant.

Fourth District   No. 4—89—0801

Opinion filed June 21, 1990.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

John B. Huschen, State's Attorney, of Eureka (Kenneth R. Boyle, Robert J. Biderman, and Peter C. Drummond, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

This case presents the question of whether the State must establish the foundation required under *Frye v. United States* (D.C. Cir. 1923), 293 F. 1013, before the results of field-sobriety tests can be admitted into evidence. We hold that a *Frye* hearing is not required.

Defendant, Samuel Sides, was convicted of driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1989, ch. 95½, par. 11–501) and sentenced to 12 months' probation. At trial, Officer Ronald Reysen testified that when he walked up to defendant's parked automobile, he found defendant therein had glassy eyes, unzipped trousers, an odor of alcohol on his breath, and an open can of beer between him

and the console. The keys to the car were in the ignition.

Defendant exhibited difficulty in getting out of the car and took 45 seconds to retrieve his driver's license from his wallet. Reysen requested that defendant perform field-sobriety tests, specifically the "finger-to-nose," "walk and turn," and "one leg stand" tests. Defendant touched his nose each of six times, but touched the tip of his nose, as he had been requested, only once. In addition, defendant was unable to complete the "walk and turn" test and was able to perform the "one leg stand" for only 3 seconds, not 30, as requested. Reysen said that defendant's speech was slightly slurred.

Reysen further testified that he had attended a three-day course on field-sobriety tests at Illinois Central College approximately four to five years earlier. Both a written and a practical examination were given at the end of the training and Reysen passed both of them. Reysen testified he had been a police officer for 9½ years and had charged approximately 50 people with DUI.

Prior to trial, the defendant filed a motion *in limine* to bar the State from introducing any evidence of the results of field-sobriety tests, as well as the results of the horizontal gaze nystagmus (HGN) test that Reysen performed. As part of this motion, defendant argued that the field-sobriety test results are not admissible because they fail to meet the *Frye* reliability standards for scientific testing, as discussed in *People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070 (a case in which the supreme court ruled that no polygraph results are admissible). The motion *in limine* was allowed with regard to the results of the HGN test, but denied with regard to the results of the field-sobriety tests.

Before this court, defendant renews the same argument:

"Because the State failed to establish an adequate foundation to show that field sobriety tests are reliable indicators of past use of alcohol, the trial court erred by denying defense counsel's motion *in limine* ***.

In this case, Officer Reysen had no knowledge of the scientific theory underlying the field sobriety tests and admitted that he gave the tests only because 'those were the tests that we were taught to administer' when an individual was believed to have been consuming alcohol. *** The State obviously failed to establish any scientific basis for the field sobriety tests and failed to show that the scientific theory underlying those tests had won general acceptance in the scientific community."

■ We reject this characterization of the field-sobriety tests. In *People v. Vega* (1986), 145 Ill. App. 3d 996, 1000-01, 496 N.E.2d 501,

504-05, this court held that admission of the results of an HGN test was error because such evidence was beyond the general knowledge of the average individual and no expert testimony was offered to establish the necessary foundation. However, reversal was not required because of the strength of the other evidence offered. (*Vega,* 145 Ill. App. 3d at 1001, 496 N.E.2d at 505.) In so holding, we stated the following:

> "Even though the admission of the evidence of the results of [the HGN] test was in error, we believe that there was sufficient other evidence to sustain the jury's verdict. The other tests, 'walk the line,' 'one leg stand,' and 'finger to nose,' *are not so abstruse as to require a foundation other than the experience of the officer administering them.*" (Emphasis added.) (*Vega,* 145 Ill. App. 3d at 1001, 496 N.E.2d at 505.)

We reaffirm in our holding today what we stated as *dicta* in *Vega.*

■ The jury in this case was given Illinois Pattern Jury Instruction, Criminal, No. 23.05 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d), which defines when a person is under the influence of alcohol. That instruction, as given, reads as follows:

> "A person is under the influence of intoxicating liquor when as a result of drinking any amount of intoxicating liquor his mental and/or physical faculties are so impaired as to reduce his ability to think and act with ordinary care."

The jury was also given IPI Criminal 2d No. 1.01 (2d ed. Supp. 1989), a portion of which reads as follows:

> "You should consider all the evidence in the light of your own observations and experience in life."

In assessing the defendant's mental and physical faculties at a time relevant to the charge that he was driving an automobile while under the influence of alcohol, it is entirely appropriate for the jury to consider the defendant's ability to perform the simple physical tasks which comprise the field-sobriety tests. The jury's inference that a defendant who had difficulty performing some of these tasks may have been similarly impaired in his ability to think and act with ordinary care when in operation of an automobile is entirely justified and one which the law permits the jury to draw.

■ Certainly in our modern society, a juror's common observations and experiences in life would include not only the driving of an automobile, but a familiarity with the degree of physical and mental acuity required to do so. No expert testimony is needed nor is a showing of scientific principles required before a jury can be permitted to conclude that a person who performs badly on the field-sobriety tests

may have his mental or physical faculties "so impaired as to reduce his ability to think and act with ordinary care."

■■ Last, defendant makes much of the fact that because Officer Reysen received some training on how to conduct the field-sobriety tests, the scientific basis underlying them must therefore be demonstrated. We disagree and find this argument to be a *non sequitur*.

For the reasons stated, the judgment is affirmed.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.