THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS C. MISCH, Defendant-Appellant.

Fourth District   No. 4—90—0673

Opinion filed May 23, 1991.

W. Keith Davis, of Jennings, Novick, Ensign & Ostling, of Bloomington, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, Thomas C. Misch, appeals the trial court's denial of his petition to rescind a statutory summary suspension of his driver's license, which resulted from application of the provisions of section 11—501.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1). On appeal, defendant argues (1) the arresting officer did not have reasonable grounds to believe that defendant was driving a motor vehicle while under the influence of alcohol or drugs or a combination thereof (DUI), and (2) section 11—501.1 of the Code does not authorize the statutory summary suspension of defendant's

driving privileges based upon the positive test for cannabis in his blood and urine. We disagree and affirm.

Defendant's first argument need not long detain us. He does not argue that any impropriety occurred when McLean County deputy sheriff Scott Shumaker stopped the pickup truck that defendant was driving on July 27, 1990, the night in question; instead, defendant argues that Shumaker's interaction with the defendant at the scene where the pickup truck was stopped did not provide Shumaker with reasonable grounds to believe that defendant was driving the pickup truck while under the influence of alcohol, other drug, or a combination thereof. (See Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1(b)(2).) Defendant made the same argument to the trial court, and it provided written findings as follows:

> "Deputy Shumaker testified as to his observations of defendant's driving, the defendant's physical appearance, the faint odor of alcohol on defendant's breath, the smell of alcohol on defendant's clothing, the defendant's performance on field sobriety tests, cups with alcohol residue found in the vehicle, and a statement by the passenger in defendant's vehicle concerning the consumption of cannabis. Based upon a totality of the evidence presented, the Court finds that reasonable grounds to believe that the defendant was driving a motor vehicle while under the influence of alcohol and/or drugs has been shown and that [defendant] has not borne his burden of proof as to that issue."

The trial court's findings of fact at the hearing on defendant's petition to rescind his statutory summary suspension will not be reversed unless those findings are against the manifest weight of the evidence. (See *People v. Sanders* (1988), 176 Ill. App. 3d 467, 469, 531 N.E.2d 61, 63.) Our review of the record in this case demonstrates that the trial court's findings were soundly based. In addition to the evidence specifically cited by the trial court, we note that defendant admitted to Shumaker that he had been drinking. Further, in a wonderfully descriptive phrase, Shumaker described defendant's demeanor as they conversed as follows: "I got this 30-foot stare in a 10-foot room." Shumaker testified that, "A couple of times I even turned around and looked to see if there was something back there that he was looking at." However, Shumaker saw nothing to account for the defendant's strange behavior. At that point, Shumaker shined his "very strong police flashlight" into defendant's eyes, yet defendant's pupils remained "very wide open."

Shumaker also testified that defendant was unable to recite the alphabet, that after defendant reached the letter "p," he stated, "k, y, x." According to Shumaker, only after he acquired all of the above information, in addition to that referred to by the trial court, did he arrest defendant for DUI. On this record, the trial court's decision clearly was not contrary to the manifest weight of the evidence.

■ In his brief, defendant also makes the following argument: "[T]here exist no reasonable grounds to believe a driver to be under the influence of any substance, within the meaning of the Illinois Motor Vehicle Code, unless there is objective and unambiguous evidence of impaired driving ability ***." We emphatically disagree and reaffirm what we wrote in *People v. Sides* (1990), 199 Ill. App. 3d 203, 556 N.E.2d 778, wherein we discussed a similar issue:

> "In assessing the defendant's mental and physical faculties at a time relevant to the charge that he was driving an automobile while under the influence of alcohol, it is entirely appropriate for the jury to consider the defendant's ability to perform the simple physical tasks which comprise the field-sobriety tests. The jury's inference that a defendant who had difficulty performing some of these tasks may have been similarly impaired in his ability to think and act with ordinary care when in operation of an automobile is entirely justified and one which the law permits the jury to draw.
>
> Certainly in our modern society, a juror's common observations and experiences in life would include not only the driving of an automobile, but a familiarity with the degree of physical and mental acuity required to do so. No expert testimony is needed nor is a showing of scientific principles required before a jury can be permitted to conclude that a person who performs badly on the field-sobriety tests may have his mental or physical faculties 'so impaired as to reduce his ability to think and act with ordinary care.' " (*Sides*, 199 Ill. App. 3d at 206-07, 556 N.E.2d at 779-80.)

Just as a jury may infer that a defendant's ability to drive a motor vehicle is impaired, based upon the factors discussed above, so may a police officer draw the same inference. No direct evidence that the defendant actually drove a motor vehicle in an erratic or unlawful manner is required either to sustain a defendant's conviction for DUI or to provide probable cause for his arrest for DUI.

Last, defendant argues that section 11—501.1 of the Code does not authorize a statutory summary suspension of the driver's license of drivers whose blood-alcohol tests do not disclose an alcohol concen-

tration of 0.10 or more grams per 100 milliliters of blood, but who otherwise test positively for the presence of cannabis in their blood or urine. Resolution of this issue requires us to analyze a recent amendment to the Code in the context of the facts in this case.

After defendant was arrested for DUI, he was taken to a hospital where Shumaker requested defendant to provide blood and urine samples. Defendant complied, and the results of those tests proved negative for the presence of alcohol and positive for the presence of cannabis.

Prior to defendant's compliance with Shumaker's request that defendant provide these samples, Shumaker provided defendant with a warning, as required by section 11—501.1(c) of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1(c)), that, in part, stated the following: "If you submit to a chemical test(s) disclosing any amount of a drug, substance, or compound resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act or a controlled substance listed in the Illinois Controlled Substances Act, your driving privileges will be suspended for a minimum of 3 months."

A few days later, after the test results from the hospital had been received, Shumaker filed his sworn report, pursuant to the provisions of section 11—501.1(f) of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1(f)). That report informed defendant that his license was going to be suspended, effective 46 days later, because he had submitted to testing which disclosed "any amount of a drug, substance, or compound in your blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act or a controlled substance listed in the Illinois Controlled Substances Act."

Citing section 11—501.1(d) of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1(d)), defendant argues that a statutory summary suspension can occur only when a person either refuses testing or submits to a test which discloses an alcohol concentration of 0.10 or more. Section 11—501.1(d) of the Code reads as follows:

> "If the person refuses testing or submits to a test which discloses an alcohol concentration of 0.10 or more, or any amount of a drug, substance, or compound in such person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act or a controlled substance listed in the Illinois Controlled Substances Act, the law enforcement officer shall immediately submit a sworn report to the circuit court of venue and the Secretary of State, certifying that the test or tests was or were requested pursuant to paragraph (a) [of this section] and the person refused to submit to a test,

or tests, or submitted to testing which disclosed an alcohol concentration of 0.10 or more." Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1(d).

Defendant argues that the above language "clearly and unambiguously" requires a law enforcement officer to certify either that the tests were requested and that the person refused to submit to a test, or that the suspect submitted to a test *which disclosed an alcohol concentration of 0.10 or more.* In the present case, defendant did not refuse to submit to a test, nor did his test results disclose an alcohol concentration of 0.10 or more; instead, those tests disclosed the presence of cannabis in his blood and urine. Defendant concedes that the legislature may have intended that drivers who have ingested cannabis should suffer a suspension of their driving privileges, just as do drivers who have blood-alcohol test results of 0.10 or more, but he maintains that this court cannot construe section 11—501.1(d) as if the legislature had explicitly so stated.

The same argument was presented to the trial court and rejected. The trial court found that the statutory warning, notice, and filing provisions pertaining to statutory summary suspension had been complied with by Deputy Shumaker, and that when section 11—501.1 of the Code is read in its entirety in conjunction with section 6—208.1 of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 6—208.1), the "legislative intent was fully expressed" to include defendant's situation. We agree.

We begin our analysis regarding legislative construction with a brief review of the applicable rules. In *American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 238, 537 N.E.2d 284, 288, the supreme court wrote that "[t]he fundamental principle of statutory construction is to give effect to the intent of the legislature." In *Department of Revenue v. Smith* (1986), 150 Ill. App. 3d 1039, 501 N.E.2d 1370, this court wrote the following:

> "The primary function of the courts in interpreting and construing statutes is to ascertain and give effect to the legislature's intent in enacting the statute. [Citation.] Courts should first look to the statutory language as the best indication of the intent of the legislature [citation] and examine the entire statute [citation]. Additionally, courts seek to determine the objective the statute sought to accomplish and the problems it sought to remedy." *Department of Revenue*, 150 Ill. App. 3d at 1047, 501 N.E.2d at 1377.

See also *Howard v. Forbes* (1989), 185 Ill. App. 3d 148, 151, 541 N.E.2d 685, 687-88.

In this case, the statute in question, the entirety of which we should examine to determine legislative intent, is section 7 of Public Act 86—1019 (Pub. Act 86—1019, §7, eff. July 1, 1990; 1989 Ill. Laws 6995, 7010), which modified sections 2—118.1, 6—206, 6—208.1, 11—500, 11—501, 11—501.1, and 11—501.5 of the Code. (See Ill. Rev. Stat. 1989, ch. 95½, pars. 2—118.1, 6—206, 6—208.1, 11—500, 11—501, 11—501.1, 11—501.5.) The intent of the legislature becomes crystal clear as each of the above sections of the Code are analyzed to determine how they were amended by section 7 of Public Act 86—1019. We will quote from relevant provisions pertaining to each of the above sections, emphasizing the portions of each added by section 7 of Public Act 86—1019.

"Sec. 2—118.1. Opportunity for hearing—statutory summary alcohol or other drug related suspension. (a) A statutory summary suspension of driving privileges under Section 11—501.1 shall not become effective until the person is notified in writing of the impending suspension and informed that he may request a hearing in the circuit court of venue under paragraph (b) of this Section and the statutory summary suspension shall become effective as provided in Section 11—501.1.

(b) Upon the notice of statutory summary suspension served under Section 11—501.1, the person may make a written request for a judicial hearing in the circuit court of venue. ***
***

The scope of the hearing shall be limited to the issues of:
* * *

4. Whether the person, after being advised by the arresting officer that the privilege to operate a motor vehicle would be suspended if the person submits to a chemical test, or tests, and such test discloses an alcohol concentration of 0.10 or more, *or any amount of a drug, substance, or compound in such person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act or a controlled substance listed in the Illinois Controlled Substances Act,* and such person did submit to and complete such test or tests which determined an alcohol concentration of 0.10 or more." (New material indicated by italics.) Pub. Act 86—1019, §7, eff. July 1, 1990; 1989 Ill. Laws 6995, 7010-11.

"Sec. 6—206. Discretionary authority to suspend or revoke license or permit—Right to a hearing. (a) The Secretary of State is authorized to suspend or revoke the driving privileges of any

person without preliminary hearing upon a showing of such person's records or other sufficient evidence that such person:

\* \* \*

28. Has ˜, as a driver, while operating a motor vehicle, been convicted of the illegal possession, *while operating or in actual physical control, as a driver, of a motor vehicle,* of more than 5 grams of any controlled substance prohibited under the Illinois Controlled Substances Act or more than 30 grams of cannabis prohibited under the provisions of the Cannabis Control Act, in which case such person's driving privileges shall be suspended for one year, and any such driver˜ who while operating a motor vehicle˜ is convicted of a second or subsequent offense, within 5 years of a previous conviction, for the illegal possession, *while operating or in actual physical control, as a driver, of a motor vehicle,* of more than 5 grams of a controlled substance prohibited under the provisions of the Illinois Controlled Substances Act or more than 30 grams of cannabis prohibited under the Cannabis Control Act shall be suspended for 5 years. The clerk of the court shall forward notice of such convictions to the Office of the Secretary of State." (New material indicated by italics—deletions by strikeouts.) Pub. Act 86—1019, §7, eff. July 1, 1990; 1989 Ill. Laws 6995, 7011-13.

"Sec. 6—208.1. Period of statutory summary alcohol or other drug related suspension. (a) Unless the statutory summary suspension has been rescinded, any person whose privilege to drive a motor vehicle on the public highways has been summarily suspended, pursuant to Section 11—501.1, shall not be eligible for restoration of the privilege until the expiration of:

\* \* \*

2. Three months from the effective date of the statutory summary suspension imposed following the person's submission to a chemical test which disclosed an alcohol concentration of 0.10 or more, *or any amount of a drug, substance or compound in such person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act or a controlled substance listed in the Illinois Controlled Substances Act,* pursuant to Section 11—501.1." (New material indicated by italics.) Pub. Act 86—1019, §7, eff. July 1, 1990; 1989 Ill. Laws 6995, 7015.

"Sec. 11—500. Definitions. For the purposes of interpreting Sections 6—206.1 and 6—208.1 of this Code, 'first offender' shall mean any person who has not had a previous conviction or

court assigned supervision for violating Section 11—501, or a similar provision of a local ordinance, or a conviction in any other state for a violation of driving while under the influence or a similar offense where the cause of action is the same or substantially similar to this Code or any person who has not had a driver's license suspension for Section 11—501.1 within 5 years prior to the date of the current offense, except in cases where the driver submitted to chemical testing resulting in an alcohol concentration of 0.10 or more, *or any amount of a drug, substance, or compound in such person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act or a controlled substance listed in the Illinois Controlled Substances Act* and was subsequently found not guilty of violating Section 11—501, or a similar provision of a local ordinance." (Emphasis in original.) Pub. Act 86—1019, §7, eff. July 1, 1990; 1989 Ill. Laws 6995, 7017.

"Sec. 11—501. Driving while under the influence of alcohol, other drug, or combination thereof. (a) A person shall not drive or be in actual physical control of any vehicle within this State while:

\* \* \*

*5. There is any amount of a drug, substance or compound in such person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act, as now or hereafter amended or a controlled substance listed in the Illinois Controlled Substance Act as now or hereafter amended.*" (New material indicated by italics.) Pub. Act 86—1019, §7, eff. July 1, 1990; 1989 Ill. Laws 6995, 7017.

"Sec. 11—501.1. Suspension of drivers license—Statutory summary alcohol or other drug related suspension—Implied consent. (a) Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent, subject to the provisions of Section 11—501.2, to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol, other drug, or combination thereof content of such person's blood if arrested, as evidenced by the issuance of a Uniform Traffic Ticket, for any offense as defined in Section 11—501 or a similar provision of a local ordinance. The test or tests shall be administered at the direction of the arresting officer. The law enforcement agency employing said officer shall designate which of the aforesaid tests shall be administered. *A urine test*

*may be administered even after a blood or breath test or both has been administered.*

\* \* \*

(c) A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of such person's privilege to operate a motor vehicle as provided in Section 6—208.1 of this Code. The person shall also be warned by the law enforcement officer that if the person submits to the test or tests provided in paragraph (a) of this Section and the alcohol concentration in such person's blood or breath is 0.10 or greater, *or any amount of a drug, substance or compound resulting from the unlawful use or consumption of cannabis, as covered by the Cannabis Control Act as now or hereafter amended, or a controlled substance listed in the Illinois Controlled Substance Act, as now or hereafter amended, is detected in such person's blood or urine,* a statutory summary suspension of such person's privilege to operate a motor vehicle, as provided in Sections 6—208.1 and 11—501.1 of this Code, will be imposed.

(d) If the person refuses testing or submits to a test which discloses an alcohol concentration of 0.10 or more, *or any amount of a drug, substance, or compound in such person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act or a controlled substance listed in the Illinois Controlled Substances Act,* the law enforcement officer shall immediately submit a sworn report to the circuit court of venue and the Secretary of State, certifying that the test or tests was or were requested pursuant to paragraph (a) and the person refused to submit to a test, or tests, or submitted to testing which disclosed an alcohol concentration of 0.10 or more.

\* \* \*

(f) The law enforcement officer submitting the sworn report under paragraph (d) shall serve immediate notice of the statutory summary suspension on the person and such suspension shall be effective as provided in paragraph (g). In cases where the blood alcohol concentration of 0.10 or greater *or any amount of a drug, substance or compound resulting from the unlawful use or consumption of cannabis, as covered by the Cannabis Control Act, as now or hereafter amended, or a controlled substance listed in the Illinois Controlled Substance*

*Act, as now or hereafter amended,* is established by a subsequent analysis of blood or urine collected at the time of arrest, the arresting officer shall give notice as provided in this Section or by deposit in the United States mail of such notice in an envelope with postage prepaid and addressed to such person at his address as shown on the Uniform Traffic Ticket and the statutory summary suspension shall begin as provided in paragraph (g)." (New material indicated by italics.) Pub. Act 86—1019, §7, eff. July 1, 1990; 1989 Ill. Laws 6995, 7018-19.

"Sec. 11—501.5. Preliminary Breath Screening Test. If a law enforcement officer has probable cause to believe that a person is violating or has violated Section 11—501 or a similar provision of a local ordinance, the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a portable device approved by the Department of Public Health. The results of this preliminary breath screening test may be used by the law enforcement officer for the purpose of assisting with the determination of whether to require a chemical test as authorized under Sections 11—501.1 and 11—501.2, and the appropriate type of test to request. *Any* ~~The~~ chemical test authorized under Sections 11—501.1 and 11—501.2 may be requested by the officer regardless of the result of the preliminary breath screening test, if probable cause for an arrest exists. The result of a preliminary breath screening test may be used by the defendant as evidence in any administrative or court proceeding involving a violation of Section 11—501 or 11—501.1." (New material indicated by italics—deletions by strikeout.) Pub. Act 86—1019, §7, eff. July 1, 1990; 1989 Ill. Laws 6995, 7020.

■ An examination of the above statutes demonstrates both the clarity of the legislature's intent and the sloppiness (in section 11—501.1(d)) with which it attempted to express that intent. We are certain that the legislature intended, by enacting section 7 of Public Act 86—1019, to equate the treatment under the law of drivers who have any amount of certain unlawful drugs, substances, or compounds in their blood or urine with the treatment under the law of drivers whose blood-alcohol test results are 0.10 or greater. Based upon that conclusion, and in order to fulfill this legislative intent, we will construe section 11—501.1(d) of the Code to read that the law enforcement officer shall immediately submit a sworn report certifying that the person from whom a test was requested either (1) refused to submit, or (2) submitted to testing which disclosed an alcohol concentra-

tion of 0.10 or more, or (3) submitted to testing which disclosed any amount of a drug, substance, or compound in such person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act or a controlled substance listed in the Illinois Controlled Substances Act.

■ Having so construed section 11—501.1(d) of the Code, nothing is left of defendant's argument that a statutory summary suspension was not authorized in this case. Accordingly, the judgment of the trial court denying defendant's petition to rescind the statutory summary suspension is affirmed.

Affirmed.

LUND, P.J., and GREEN, J., concur.