No. 2--00--0850

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE  ) Appeal from the Circuit Court

OF ILLINOIS,                    )  of Du Page County.

) 

     Plaintiff-Appellee, )

  )

v.  )  No. 99--DT--3572

                                )      

                                )

JEFFREY A. BOSTELMAN, ) Honorable

                                )  Kathryn E. Creswell,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court:

Following a bench trial, defendant, Jeffrey Bostelman, was convicted of driving under the influence of alcohol (625 ILCS 5/11--501(a)(2) (West 1998)).  On this appeal he argues that (1) his trial counsel provided ineffective assistance for not seeking to exclude, as lacking foundation, the arresting officer's testimony concerning the field sobriety tests defendant underwent and the arresting officer's opinion concerning defendant's state of intoxication; and (2) there was insufficient evidence to convict him of driving under the influence of alcohol.  We reject both arguments and affirm.

BACKGROUND 

On September 2, 1999, defendant was charged with driving under the influence of alcohol (625 ILCS 5/11--501(a)(2) (West 1998)), operating a motorcycle with illegal handlebars (625 ILCS 5/11--1403(c) (West 1998)), and speeding (625 ILCS 5/11--601(b)(West 1998)).        

At the beginning of defendant’s bench trial, the court granted the State’s motion to nol-pros the illegal handlebars charge.  Officer Darrell Klunk testified for the State that on September 2, 1999, he had been a police officer with the Village of Lombard for  2½ years.  During the early morning hours on that date, Klunk was on traffic patrol traveling eastbound on Roosevelt Road in Lombard.  At 3:30 a.m., he observed a "fast moving motorcycle" traveling westbound on Roosevelt Road.  Employing his dash-mounted radar unit, Klunk gauged the motorcycle's speed at 51 miles per hour.  As the speed limit in that area was 35 miles per hour, Klunk activated his overhead lights and pursued the motorcycle.  As he pursued it, Klunk did not observe the motorcycle weave within its lane or cross into the oncoming lanes of traffic.       

Klunk testified that when he stopped the motorcycle, he approached the driver and asked him to produce his driver's license and insurance card, by which Klunk identified the driver as defendant.  Klunk did not notice defendant having any physical difficulty in producing these items.  Klunk asked defendant where he came from and where he was going, and defendant responded that he had come from Galway's, a restaurant and bar, and was on his way to his home in St. Charles.  Asked if he had consumed any alcoholic beverages, defendant replied that he had had "a couple" at Galway's.  While he conversed with defendant, Klunk smelled a strong odor of an alcoholic beverage on defendant's breath and observed that defendant's eyes were glassy and bloodshot.  

Klunk testified that, based on these observations, he decided to ask defendant to perform several field sobriety tests.  First, Klunk asked defendant to recite the alphabet from "E" to "W."  Defendant did not immediately comply but instead inquired why Klunk was asking him to perform the test.  Defendant also produced from his wallet the business cards of two Chicago-area police officers and remarked that the officers were his acquaintances.  Klunk  reiterated his request that defendant recite the alphabet from "E" to "W," and defendant again asked why Klunk was asking him to perform the test.  Eventually, defendant began reciting the alphabet, beginning at "A" and stopping at "L."  Officer Klunk asked defendant to continue, and defendant did not.  Officer Klunk testified that, based on this performance, defendant failed this test.

Klunk testified that he then asked defendant to count from 67 down to 43.  Defendant asked why Klunk was asking him to perform the test.  Eventually, defendant began counting at 67 and stopped at 63.  Klunk repeated the instructions to defendant.  Defendant then began counting down again, this time starting at 67 and stopping at 61.  Klunk testified that, based on this performance, defendant failed the counting test.

On cross-examination, Klunk corrected himself and testified that defendant began at 66, not 67, on his first attempt and stopped at 63, and that he did not stop defendant from counting despite the fact that defendant started with the wrong number.  Klunk also testified on cross-examination that he did not in fact repeat the instructions after defendant stopped counting the first time and that defendant began counting the second time on his own initiative.  Klunk, however, reiterated his conclusion that defendant had failed the test.     

Klunk testified that, following the counting test, he asked defendant to perform two additional field sobriety tests in a nearby parking lot, which had a flat, dry, and level asphalt surface.  First, Klunk asked defendant to stand with his arms at his side and with his feet positioned heel-to-toe.  Demonstrating the test, Klunk instructed defendant to lift one of his feet six inches off the ground, stare at the toe of the raised foot, and count to 30 by 1000's (
i.e.
, "one-one thousand, two-one thousand," 
etc.
) while keeping the foot raised.  Defendant indicated that he understood the instructions and demonstration and that he had no physical problems that would prevent him from performing the test.  However, when defendant attempted the test, he stood with his arms at waist level while his body swayed.  Defendant placed his raised foot back down on the pavement four times and stopped counting at 18.  Klunk testified that, based on this performance,  defendant failed the test.  On cross-examination, Klunk testified that he did not recall, but acknowledged that it was possible, that defendant succeeded in counting to 30.  Klunk, however, did not contradict on cross-examination his earlier statement that defendant’s foot touched the ground several times before he reached 30.   

Klunk testified that he next asked defendant to walk with his hands by his sides along an imaginary line, placing the heel of the front foot against the toes of the back foot.  Defendant was to take nine steps, pivot on the line, and then take nine steps back.  As with the previous test, Klunk supplemented his verbal instructions with a demonstration.  When he attempted the test, defendant's heel was one inch apart from his toes on three of the first nine steps.  When defendant turned, he failed to pivot as instructed.  Additionally, defendant stepped off the imaginary line by the width of his foot three times on the return set of steps.  Klunk testified that, based on this performance, defendant failed this test.  Klunk also administered the horizontal gaze nystagmus (HGN) test but did not testify concerning the results of that test. 

Klunk testified that, following the tests, he again asked defendant how much he had to drink that night.  Defendant responded that he had consumed a can of beer at 12 noon the day before and another can at 1 a.m. that morning.  Defendant also remarked that his father was a police officer.  Klunk arrested defendant for driving under the influence, at which point defendant began to cry.   Klunk testified that he asked defendant a series of questions in the holding area of the police station.  When Klunk asked defendant what time it was, defendant responded that he did not know because Klunk had taken his watch.  Klunk testified that a clock was within defendant's sight at this time.  Klunk then asked defendant what day of the week it was, and defendant responded that he did not know because Klunk had taken his watch.  Asked what the date was, defendant replied that he was confused.  Asked what city or town he was in, defendant replied, "How should I know?  I am in a cell right now."  Defendant did, however, accurately recall the direction in which he was driving when he was stopped by Klunk.  Asked when he had begun his travel homeward that morning, defendant again said that he was confused.  Asked if he had been drinking, defendant replied, "No, sir."  Defendant refused Klunk’s request that he submit to a Breathalyzer test.  

Klunk testified that, throughout his interaction with defendant, he noticed no slurring or murmuring in defendant's speech and had no difficulty understanding defendant.  Klunk testified that, based on defendant's moving violation, his physical appearance, and his failure to perform field sobriety tests adequately, he concluded that defendant was under the influence of alcohol.  Klunk testified that, during his time with the Lombard police department, he had participated in approximately 20 arrests for driving under the influence and had administered the HGN test on approximately 50 occasions.  The State called no witnesses other than Klunk.  Following Klunk's testimony, defendant moved for a directed finding, which the court denied.   

Defendant testified that he drank one beer over lunch on September 1, 1999.  At about 5 p.m. on that date, defendant met his father for dinner but did not have any alcoholic beverages with dinner.  After dinner, defendant went home, changed his clothes, and then retrieved his motorcycle from storage at about 7 p.m.  He drove the motorcycle into Chicago and met a friend.  They drove around the city for several hours, eventually stopping at a restaurant named "Iggy’s," where defendant drank a bottle of water but no alcohol beverages.

Defendant testified that he parted company with his friend and drove westward toward his home in St. Charles.  On the way, he  stopped at Galway’s to visit his friend, Tim Tierney.  He remained at Galway’s from about 1 a.m. to 3 a.m., conversing and playing pool with Tierney.  He drank one beer during this time.  As defendant left, Tierney offered him a cup of coffee.  Defendant declined and drank a glass of water instead.  On his way through Lombard, defendant was stopped by Klunk.

Defendant testified that, once he had agreed to perform some field tests, Klunk told him to recite the alphabet, not to start and stop at any particular letters.  Defendant started at "A" but when he reached "L," Klunk told him to stop and informed him that he failed the test.  When defendant asked Klunk why he failed, Klunk informed him that he failed to recite the alphabet from "E" to "W."  Defendant testified that he had not heard Klunk instruct him initially to recite the alphabet from "E" to "W."  Defendant, however, did not have a chance to explain this to Klunk before he was asked to perform the next test.   

Defendant further testified that, when he began the counting test by starting at 66, Klunk told him that he performed it incorrectly because he started at 66 instead of 67.  When defendant started again, this time at 67, Klunk stopped defendant and told him he failed the test.

Defendant testified that he counted to 30 during the one-leg balance test, but he acknowledged that he failed to keep his foot elevated while he counted and that, in stating that defendant failed the test, Klunk had cited that as the reason.  Defendant, however, testified that once he realized how to position his leg correctly, he was able to keep his leg raised for the rest of the count.  Defendant testified that he believed his performance on the walking test was adequate although his feet may not have been touching on all steps.  Defendant also testified that he had difficulty seeing Klunk demonstrate the pivot-turn.

Defendant testified that the reason why he stated at the police station that he was confused was that he was frustrated because, no matter what he said to the police officers, he was told that he was wrong or that he had failed.  Defendant stated that he refused to take a Breathalyzer test because he had heard from "everyone" that one should always refuse this test.  Defendant testified that his ability to drive, speak, or walk was not impaired by the two beers he consumed during the early evening hours of September 1, 1999, and the early morning hours of September 2, 1999.  Asked whether he was "under the influence of an intoxicating alcohol at any time that day or night," defendant replied that he was not under the influence to the extent that he was "impaired and not able to drive."     

On cross-examination, defendant testified that he did not remember displaying the business cards of two police officers to Klunk.  Defendant acknowledged that the cards might have come out  of his wallet when he produced his driver’s license.  Defendant also denied ever asking Klunk for "a break."     

Defendant called no other witnesses.  At the close of the testimony, the court found defendant guilty of driving under the influence, citing defendant’s bloodshot eyes and the odor of an alcoholic beverage on his breath, his poor performance on the field sobriety tests, his crying when he was arrested, his admission that he was drinking, his consciousness of guilt as implied in his production of the business cards of two police officers, his statement that his father was a police officer, and his refusal to take a Breathalyzer test.  The court also found defendant guilty of speeding.  The court sentenced defendant to 12 months' probation and ordered him to pay fees, costs, and a fine. 

On April 18, 2000, defendant, by new counsel, filed a motion to reconsider and for a new trial, arguing that his trial counsel provided ineffective assistance for not seeking to exclude, as lacking foundation, Officer Klunk’s testimony concerning defendant’s performance on the field sobriety tests and his opinion testimony that defendant was under the influence of alcohol.  Alternatively, defendant argued that the State did not prove beyond a reasonable doubt that he was guilty of driving under the influence.  Defendant later supplemented the motion with an argument that his trial counsel was ineffective for failing to call Tim Tierney, who trial counsel knew could have provided exculpatory testimony. 

The trial court rejected defendant’s ineffectiveness claims concerning the alleged incompetency of certain evidence, stating that it "only considered competent evidence."  The court did, however, rule that trial counsel was ineffective for failing to call Tierney as a witness.  Rather than grant a new trial, the court permitted defendant to reopen the case and present the testimony of Tierney.   

Tierney testified that he owns and operates Oak Park Valet Services, which provides valet parking services to restaurants and bars in the Chicago area.  Tierney testified that, in his 15 years in the valet business, he witnessed approximately 70  restaurant or bar patrons who exhibited signs of intoxication such as slurred speech and stumbling.  He further testified that, in his personal life, he saw "thousands" of persons who he thought were under the influence of alcohol.  

Tierney testified he commenced work at Galway's on September 1, 1999, at about 11:30 p.m.  He did not consume any alcohol while he worked.  While Tierney was standing outside the front door to Galway's at about 1 a.m. on September 2, 1999, he witnessed defendant arrive on a motorcycle.  Tierney talked briefly to defendant.  Tierney did not observe defendant having difficulty operating his motorcycle or difficulty in speaking.  Defendant then entered Galway's, where he had intermittent contact with Tierney as the latter patrolled the bar.  During this time, Tierney saw defendant playing pool but did not observe defendant drinking alcohol.  When defendant went to leave Galway's after a couple of hours, Tierney walked him out to the motorcycle.  Tierney did not observe anything in defendant's speech or behavior to indicate that he was intoxicated or not fit to drive.  Tierney testified that, had he thought defendant was under the influence of alcohol, he would not have let defendant operate his motorcycle.

   Tierney testified on cross-examination that he had never seen defendant under the influence of alcohol in the 20 years he knew defendant.  Tierney also testified that defendant was not constantly in his view as he worked and that he did not pay attention to whether defendant was drinking alcohol or not. 

Following Tierney's testimony, the court vacated the speeding conviction and reinstated the driving-under-the-influence conviction.  The court determined that Tierney's testimony was outweighed by Officer Klunk's because Tierney testified that he was not "with the defendant for the bulk of the time that the defendant was at Galway's" and because Tierney could not testify as to what defendant drank at Galway's. 

With the obvious exception of the argument concerning the omission of Tierney as a defense witness, defendant reiterates on this appeal the arguments of his posttrial motion.  Specifically, defendant argues that trial counsel was ineffective because Klunk's assessment of defendant's state of intoxication was "offered and received absent any indication of Officer Klunk's training and experience in recognizing intoxicated persons, or more specifically, intoxicated motorists."  Defendant argues that trial counsel was ineffective also because evidence concerning defendant's performance on the field sobriety tests was offered and admitted into evidence even though the record was "void of any indication that Officer Klunk had any particular training or experience in the administration of standardized field sobriety tests."      

  ANALYSIS

I. Defendant's Ineffective Assistance of Counsel Claims

Normally, a defendant's argument on appeal that the State failed to lay the proper foundation for the admission of evidence is deemed waived if no objection on foundational grounds was made to the evidence in the trial court.  See 
People v. Rodriguez
, 313 Ill. App. 3d 877, 887 (2000).  A defendant can obviate this rule by showing that his trial counsel's failure to object constituted ineffective assistance of counsel.  
Rodriguez
, 313 Ill. App. 3d at 887.  Illinois courts evaluate ineffective-assistance-of-counsel claims under the test set forth in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  See 
People v. Albanese
, 104 Ill. 2d 504, 525-27 (1984).  To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that defense counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability that, but for defense counsel's unprofessional errors, a different result would have been achieved.  
Strickland
, 466 U.S. 668 at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  Mere conjecture and speculation is not sufficient to establish this probability.  
People v. Gosier
, 165 Ill. 2d 16, 24 (1995).  Because a defendant's failure to establish either part of the 
Strickland
 test will defeat an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one component.  
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.  Accordingly, a court considering a claim of ineffective assistance "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069. 

There is no merit behind the objections that defendant asserts trial counsel should have made, and thus neither objection would have prevented the admission of the evidence it sought to exclude.  First, the State provided sufficient foundation for the admission of Klunk's testimony concerning his administration of the field sobriety tests.  We find guidance in the Fourth District case of 
People v. Vega
, 145 Ill. App. 3d 996, 1001 (1986), in which the court observed that the "walk the line," "one leg stand," and "finger to nose" field sobriety tests "are not so abstruse as to require a foundation other than the experience of the officer administering them."  The court found sufficient foundation for the arresting officer’s testimony concerning the defendant’s performance of these tests in the officer’s statement that he had performed 500 to 600 traffic stops in his career, 20 of which were for driving under the influence.  
Vega
, 145 Ill. App. 3d at 1001.  Officer Klunk’s level of experience was comparable, as he had been involved not simply in 20 stops for driving under the influence, but in some 20 arrests for driving under the influence of alcohol.   We recognize that the issue on appeal in 
Vega
 was not the competence of evidence concerning the administration of those three particular field sobriety tests but, rather, the competence of evidence concerning the defendant’s performance on the HGN test.  The court held that the physiological rationale for the HGN test is beyond the general knowledge of the average individual.  
Vega
, 145 Ill. App. 3d at 1000.  Thus, the court explained, adequate foundation for evidence of an HGN test must consist of expert testimony establishing the test as " 'a well-recognized scientific principle or discovery' " that has gained " ' general acceptance in the particular field in which it belongs.' "  
Vega
, 145 Ill. App. 3d at 1000, quoting 
Frye v. United States
, 293 F. 1013, 1014 (D.C. Cir. 1923).  The court held that the results of the HGN test undertaken by the defendant were not adequately established in the record, but it nonetheless sustained defendant’s conviction of driving under the influence based on the "walk the line," "one leg stand," and "finger to nose" field sobriety tests, which, being not so "abstruse" as the HGN test, did not have so stringent a foundational requirement.  
Vega
, 145 Ill. App. 3d at 1000-01. 

However, in 
People v. Sides
, 199 Ill. App. 3d 203 (1990), the same court had occasion to squarely decide the issue of whether the "finger-to-nose," "walk and turn," and "one leg stand" field sobriety tests should share the same foundational requirements as the HGN test.  Quoting 
Vega
’s statement (reproduced above) that the only foundation needed for such tests was the experience of the officer, the court stated, "We reaffirm in our holding today what we stated as 
dicta
 in 
Vega
."  
Sides
, 199 Ill. App. 3d at 206, citing 
Vega
, 145 Ill. App. 3d at 1001.  We recognize that the officer in 
Sides
 testified that he had undergone formal training in the administration of field sobriety tests, but we see no suggestion in 
Sides
 that such testimony is necessary to provide foundation for the admission of testimony concerning the administration of field sobriety tests other than the HGN test.  Rather, in our view, when the court in 
Sides
 incorporated into its holding its earlier 
dicta
 in 
Vega
, it also incorporated 
Vega
’s application of that 
dicta
 to the facts before it.  As noted,
 the court in 
Vega
 found sufficient foundation for the admission of the field sobriety test results in the officer’s testimony that he had performed numerous traffic stops, a portion of which included stops for driving under the influence.  See 
Vega
, 145 Ill. App. 3d at 1001.  Here, as Officer Klunk testified that he had participated not simply in 20 traffic stops for driving under the influence but in 20 arrests for driving under the influence, his experience actually exceeded that of the officer in 
Vega
.  Although the alphabetical and numerical tests that defendant undertook were not administered by the officers in 
Vega
 and 
Sides
, certainly there was nothing more abstruse in these exercises than in the physical coordination and balance exercises undertaken by defendant as well as by the defendants in 
Vega
 and 
Sides
.  

Thus, we reject defendant's assertion that Klunk’s testimony concerning the field tests other than the HGN test was incompetent in that Klunk did not testify as to his training or previous experience in applying those tests.  Even if it were not reasonable to infer from the record that Klunk had performed these other tests previously, given his testimony that he had previously performed the HGN test, it would not render evidence of defendant’s performance on those tests incompetent.  There is no hint in 
Vega
, 
Sides
, or in any other Illinois case known to us that the evidence of field sobriety tests other than the HGN test is admissible only upon the arresting officers’ explicit testimony that he has previous experience or formal training in the administration of those tests.   

Moreover, such a requirement would be meaningless given the nature of the field sobriety tests applied in the case before us.  Klunk testified with specificity as to how the tests were to be performed and as to defendant's performance of the tests.  Since the trier of fact was thus apprised of the mechanics of the tests and with how defendant performed them, Klunk's failure to testify expressly that he had any training or previous experience in the administration of these tests did not affect the fact finder's capacity to assess for itself defendant's level of sobriety from his performance of these tests.  The following discussion in 
Sides
 is instructive on this point:  

"In assessing the defendant's mental and physical faculties at a time relevant to the charge that he was driving an automobile while under the influence of alcohol, it is entirely appropriate for the jury to consider the defendant's ability to perform the simple physical tasks which comprise the field-sobriety tests.  The jury's inference that a defendant who had difficulty performing some of these tasks may have been similarly impaired in his ability to think and act with ordinary care when in operation of an automobile is entirely justified and one which the law permits the jury to draw.

Certainly in our modern society, a juror's common observations and experiences in life would include not only the driving of an automobile, but a familiarity with the degree of physical and mental acuity required to do so.  No expert testimony is needed nor is a showing of scientific principles required before a jury can be permitted to conclude that a person who performs badly on the field-sobriety tests may have his mental or physical faculties 'so impaired as to reduce his ability to think and act with ordinary care.' "  

Sides
, 199 Ill. App. 3d at 206-07, quoting Illinois Pattern Jury Instructions, Criminal, No. 23.05 (2d ed. Supp. 1989).

The trial court was fully capable of drawing on its own experiences  in determining the state of defendant’s sobriety from his performance of the simple physical tasks utilized in the field sobriety tests other than the HGN.  The trial court was within its rights in determining, aside from any evidence that Klunk arranged the tests in accordance with his training or previous experience, that the field sobriety tests measured abilities that are tested innumerable times throughout the average day of the normally active person.  Indeed, so fundamental are such exercises of balance, coordination, and basic cognition to the activity of the average person that "even a layperson is competent to testify regarding a person’s intoxication from alcohol, because such observations are within the competence of all adults of normal experience."  
People v. Workman
, 312 Ill. App. 3d 305, 310 (2000).     

For the same reasons, we reject defendant’s argument that Officer Klunk was incompetent to offer his opinion of defendant’s sobriety.  If a layperson with no more than normal experience is qualified to assess an individual’s state of sobriety (see 
Workman
, 312 Ill. App. 3d at 310), so much more qualified is a police officer who has made several arrests for driving under the influence.  

Because we conclude that defendant was not prejudiced by his trial counsel’s failure to lodge objections to Officer Klunk's opinion testimony concerning defendant's intoxication and to his testimony concerning defendant's performance on the field sobriety tests, we need not consider whether this failure to object fell below an objective standard of reasonableness.  

II.  Defendant's Sufficiency of the Evidence Claim

In a prosecution for driving under the influence of alcohol, the State must establish that the defendant was in actual physical control of a vehicle at a time when he was under the influence of alcohol.  625 ILCS 5/11--501(a)(2) (West 1998).  The State bears the burden of proving beyond a reasonable doubt each element of the charged offense.  
People v. Gilliam
, 172 Ill. 2d 484, 515 (1996).  A reviewing court will not overturn a conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant’s guilt.  
People v. Manning
, 182 Ill. 2d 193, 210 (1998).

Defendant does not dispute that he was in physical control of the vehicle at the relevant time.  Whether defendant was under the influence of alcohol in driving his motorcycle depends on whether  he was "less able, either mentally or physically, or both, to exercise clear judgment, and with steady hands and nerves operate an automobile with safety to himself and to the public."  
People v. Seefeldt
, 112 Ill. App. 3d 106, 108 (1983).  Alternatively stated, "[a] person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care."  Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000).  The testimony of the arresting officer alone is sufficient, if credible, to sustain a conviction for driving under the influence of alcohol.  
People v. Janik
, 165 Ill. App. 3d 453, 461 (1988). 

Here, Officer Klunk testified that defendant’s breath smelled of an alcoholic beverage, that his eyes were glassy and bloodshot, and that he exhibited confusion at the police station.  Klunk also testified that defendant was unable to complete the basic physical and mental exercises asked of him.  It is not clear from the record whether some of defendant’s shortcomings during the administration of the field tests were due to inability or to mere obstinacy.  Whatever the case, they were relevant either as evidence of physical and mental impairment (see 
Sides
, 199 Ill. App. 3d at 206-07) or as awareness of guilt (see 
People v. Roberts
, 115 Ill. App. 3d 384, 387 (1983) (holding that refusal to take a potentially incriminating test, such as a field sobriety test, is evidence of knowledge of guilt)).  In addition to the foregoing evidence, the trial court found that defendant attempted to evade responsibility by remarking that he had acquaintances and a family member who were police officers and by refusing to take a breath test.  The court was correct in interpreting this conduct as of the type that implies consciousness of guilt.  See 
People v. Thomas
, 200 Ill. App. 3d 268, 283 (1990) (driver refused to take breath test); 
People v. Moore
, 279 Ill. App. 3d 152, 154-55 (1996) (driver fled from police officer after traffic stop).           

Defendant notes several points on which his testimony and Tierney’s testimony conflicted with Officer Klunk’s.  However, the credibility of the witnesses and the weight of the evidence are for the trier of fact to assess.  
People v. Janik
, 127 Ill. 2d 390, 401 (1989).  Provided the State’s evidence, if believed, would be legally sufficient for conviction, then the resolution of conflicts in testimony is for the trier of fact to determine.  
People v. Mundorf
, 97 Ill. App. 2d 130, 138-39 (1968).  We do not find the trial court’s heavy reliance on Klunk’s testimony and its discounting of Tierney’s testimony misplaced.  Based on the State’s evidence at trial, the trial court reasonably could have found that defendant operated his motorcycle while either his physical or mental faculties were compromised by alcohol such that he was not capable of operating a vehicle with ordinary care.    

The judgment of the circuit court of Du Page County is affirmed.     

Affirmed.

McLAREN and CALLUM, JJ., concur.