**The STATE of Ohio**

v.

**KOEPPEL.**

Lima Municipal Court,
Allen County, Ohio.

No. 01TRC00713.

Decided Jan. 14, 2002.

*Michael Short,* Lima Assistant City Prosecutor, for the state.

*Craig Gottschalk,* for defendant.

RicKard A. Workman, Judge.

This matter came on to be heard April 23, 2001 on defendant's motion to suppress. At the motion hearing, defendant, Jerry R. Koeppel, was present and represented by Attorney Craig Gottschalk. Lieutenant Smith was present on behalf of the Ohio State Highway Patrol and the state of Ohio was represented by Assistant City Prosecutor Michael Short. The defendant raises four issues:

I. Did the trooper have reasonable suspicion to stop defendant?

II. Can the field sobriety tests administered be used as evidence in determining whether the trooper had probable cause to arrest the defendant for driving under the influence of alcohol when the tests were not administered in strict compliance with the National Highway Traffic Safety Administration procedures?

III. Did the trooper have probable cause to arrest the defendant for driving under the influence of alcohol?

IV. Can the field sobriety tests administered be used as evidence of defendant's driving under the influence of alcohol at trial when they were not administered in strict compliance with the National Highway Traffic Safety Administration procedures? and

V. Should defendant's statements be suppressed?

The court makes the following findings of fact.

On January 19, 2001, Sergeant B.G. Smith (now Lieutenant), who was in uniform and driving a properly marked Highway Patrol cruiser, observed defendant's vehicle proceeding east on State Route 309 in Allen County, Ohio. The defendant was weaving within his own lane of travel. As the defendant was driving away from a traffic light, the trooper heard a sound from the defendant's car that indicated the defendant had missed a gear. At this time, the trooper observed defendant's vehicle swerve three to four feet out of his lane of travel. (In his report, the trooper wrote three to four inches; however, the trooper testified that this was a typographical error.) The trooper activated his pursuit lights, but defendant continued to drive approximately one mile before stopping.

Upon contact with defendant, the trooper noticed that defendant's eyes were bloodshot and glassy and that there was a strong odor of alcohol about the defendant's person. Defendant volunteered that he had had a "couple of beers."

Defendant was asked to perform three field sobriety tests. Defendant exhibited all six clues on the Horizontal Gaze Nystagmus test and performed poorly on the walk-and-turn test. Defendant refused to perform the one-leg stand, stating that he "couldn't even do that if he was sober." At this time, the defendant was placed under arrest for driving while under the influence ("DUI"), given his *Miranda* rights, and taken to the Highway Patrol Post. On the way to the post, defendant stated that he knew he was wrong. At the post, after having been read the implied consent form, defendant refused to perform the breath test. Trooper Smith's testimony indicates that the field sobriety tests were not administered in strict compliance with the procedures established by the National Highway Traffic Safety Administration.

**Issue I:** Did the trooper have reasonable suspicion to stop the defendant?

4

**Answer:** Yes. Defendant's motion to suppress all evidence obtained as a result of the stop of the defendant is overruled.

■ The court finds that the officer observed the defendant's vehicle weaving within his own lane of travel, going three to four feet left of center (violating R.C. 4511.33[A]), and continuing for approximately one mile after the officer turned on his pursuit lights. These observations gave Lieutenant Smith reasonable suspicion to stop defendant.

The court does not agree with defendant's position that the crossing of the center line was "*de minimis.*" This court does not consider crossing of the center line by three to four feet *de minimis.* Even if the crossing of the center line were three to four *inches,* as written in the trooper's report, the Third District Court of Appeals stated the following in *McComb v. Andrews* (Mar. 22, 2000), Hancock App. No. 5–99–41, unreported, 2000 WL 296078, at * 6:

"We are aware of no principle in criminal jurisprudence that prohibits a police officer who observes an apparent traffic violation from initiating a *Terry* [*v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889] stop simply because the violation observed was '*de minimis.*'"

**Issue II:** Can the field sobriety tests administered be used as evidence in determining whether the trooper had probable cause to arrest the defendant when they were not administered in strict compliance with the National Highway Traffic Safety Administration procedures?

**Answer:** No. Defendant's motion that the court not consider the field sobriety tests when determining probable cause is granted.

■ According to *State v. Homan* (2000), 89 Ohio St.3d 421, 732 N.E.2d 952, field sobriety tests must be performed in strict compliance with the procedures established by the National Highway Traffic Safety Administration ("NHTSA") when determining probable cause. The testimony of Trooper Smith indicates that they were not administered in strict compliance with the NHTSA procedures and, therefore, cannot be used in determining whether the trooper had probable cause to arrest the defendant.

**Issue III:** Did the trooper have probable cause to arrest the defendant for driving under the influence of alcohol?

**Answer:** Yes. Defendant's motion to suppress his arrest for lack of probable cause is overruled.

■ The court agrees with the defendant that the field sobriety tests should not be used to determine probable cause because they were not in strict compliance with the NHTSA's guidelines. However, even without the use of the field sobriety tests, the trooper had probable cause to arrest defendant. The

trooper testified that defendant had a strong odor of alcohol about his person and that his eyes were glassy and bloodshot. These observations, combined with seeing defendant weaving in his own lane of travel, going left of center by three to four feet, and taking approximately one mile to stop after the trooper turned on his overhead lights, gave Trooper Smith probable cause to arrest defendant for DUI.

**Issue IV**: Can the results of the field sobriety tests be used as evidence of defendant's driving under the influence of alcohol at trial when they were not administered in strict compliance with NHTSA's procedures?

**Answer**: Yes, as to the walk-and-turn test. Defendant's motion to suppress the use of the walk-and-turn test at trial is overruled.

No, as to the Horizontal Gaze Nystagmus test. Defendant's notion to suppress the use of the Horizontal Gaze Nystagmus ("HGN") test at trial is granted.

 Since the court could not find any Ohio case law on point, it relies on cases from other states for guidance.

The HGN test is based upon scientific theory. Therefore, if the state is trying to correlate the defendant's performance with what the test results for the defendant would have been in a chemical test or whether the defendant was under the influence of alcohol, the defendant having chosen not to take a chemical test, the officer must have administered this field sobriety test (the HGN) in strict compliance with the procedures established by the NHTSA.

A leading case that distinguishes the HGN from other field sobriety tests is *Florida v. Meador* (Fla.App.1996), 674 So.2d 826, 831–832, where the court stated:

"The mere fact that the NHTSA studies attempted to quantify the reliability of the field sobriety tests in predicting unlawful BAC's [breath-alcohol content] does not convert all of the observations of a person's performance into scientific evidence. The police officer's observations of the field sobriety exercises, other than the HGN test, should be placed in the same category as other commonly understood signs of impairment, such as glassy or bloodshot eyes, slurred speech, staggering, flushed face, labile emotions, odor of alcohol or driving patterns.

"* * *

"As long as the testimony by the officers is restricted to lay observations, we agree with the state that * * * the probative value of the psychomotor testing is not outweighed by the danger of unfair prejudice."

The above quote not only supports the elimination of the HGN if the officer does not strictly comply with NHTSA guidelines but also supports the use of other field sobriety tests or exercises as evidence of a defendant's sobriety.

Ohio has a bifurcated system of determining whether a person is under the influence of alcohol while driving. If the defendant refuses to take a chemical test, the question is whether the defendant is under the influence. In 4 Ohio Jury Instructions (2001), Section 545.25, "[u]nder the influence" is defined as follows:

" 'Under the influence' means that the defendant consumed some (alcohol) (drug of abuse) (alcohol and a drug of abuse), whether mild or potent, in such a quantity, whether small or great, that it adversely affected and appreciably impaired the defendant's actions, reaction, or mental processes under the circumstances then existing and deprived him of that clearness of intellect and control of himself which he would otherwise have possessed. The question is not how much (alcohol) (drug of abuse) (alcohol and a drug of abuse) would affect an ordinary person. The question is what effect did any (alcohol) (drug of abuse) (alcohol and a drug of abuse), consumed by the defendant, have on him at the time and place involved. If the consumption of (alcohol) (drug of abuse) (alcohol and a drug of abuse) so affected the nervous system, brain, or muscles of the defendant so as to impair, to an appreciable degree, his ability to operate the vehicle, then the defendant was under the influence."

Tests that involve observations similar to those made by any layperson in assessing an individual's sobriety are probative. Having an individual perform the walk-and-turn test is an exercise that would involve observations similar to those made by, and within the common experience of, the ordinary citizen. In *People v. Sides* (1990), 199 Ill.App.3d 203, 206, 145 Ill.Dec. 160, 556 N.E.2d 778, the court stated:

"In assessing the defendant's mental and physical faculties at a time relevant to the charge that he was driving an automobile while under the influence of alcohol, it is entirely appropriate for the jury to consider the defendant's ability to perform the simple physical tasks which comprise the field-sobriety tests. The jury's inference that a defendant who had difficulty performing some of these tasks may have been similarly impaired in his ability to think and act with ordinary care when in operation of an automobile is entirely justified and one which the law permits the jury to draw. Certainly in our modern society, a juror's common observations and experiences in life would include not only the driving of an automobile, but a familiarity with the degree of physical and mental acuity required to do so."

The court notes that the *Homan* opinion, upon which defendant relies heavily, applies only to probable cause. For reasons stated above, the court is of the opinion that field sobriety tests, other than the HGN, are simply lay observations that can help determine whether a person is under the influence of alcohol. They

are common experiences based on everyday observations. The court finds them relevant and probative and, therefore, admissible.

The defendant can challenge the validity of these tests. Deviations from the NHTSA guidelines should go to the weight of the evidence, not admissibility. Accord, see *State v. Matson* (Nov. 27, 2001), Seneca App. No. 13–01–09, unreported, 2001 WL 1504190, at * 2, where the court states:

"By ruling that the credibility of the field sobriety tests should be determined by the jury at trial, the trial court in no way conclusively ruled on the validity of those tests. Accordingly, the appellant was not foreclosed from presenting at trial the defense that the tests were improperly performed."

**Issue V:** Should defendant's statements be suppressed?

**Answer:** No. Defendant's motion to suppress statements that he made is overruled. Based upon the testimony of Trooper Smith, the court considers the defendant's statements to be voluntary.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, as to Issue I (Did the trooper have reasonable suspicion to stop the defendant?), defendant's motion is overruled. As to Issue II (Can the field sobriety tests administered be used as evidence in determining whether the trooper had probable cause to arrest defendant for driving while under the influence of alcohol when they were not administered in strict compliance with the NHTSA procedures?), defendant's motion to suppress the tests for determining probable cause is granted. As to Issue III (Did the trooper have probable cause to arrest the defendant for driving under the influence of alcohol?), defendant's motion to suppress the stop and arrest is overruled. As to Issue IV (Can the results of the field sobriety tests be used as evidence of the defendant's driving under the influence of alcohol at trial when they were not administered in strict compliance with the NHTSA procedures?), defendant's motion to suppress is granted as to the Horizontal Gaze Nystagmus test and overruled as to the walk-and-turn test. As to Issue V (Should defendant's statements be suppressed?), defendant's motion is overruled.

*Judgment accordingly.*