OPINION
{¶ 1} The appellant, the State of Ohio, appeals the December 24, 2001 judgment entry of the Common Pleas Court of Mercer County, Ohio, suppressing evidence obtained during three field sobriety tests.
{¶ 2} The relevant facts of this case are as follows. On June 22, 2001, the appellee, Kevin Schmitt, was stopped by Trooper Westerfield of the Ohio State Highway Patrol. Suspecting that Schmitt was under the influence of alcohol and/or a drug of abuse, Trooper Westerfield conducted three field sobriety tests: the Horizontal Gaze Nystagmus ("HGN"), the one-leg-stand, and the walk-and-turn test. After concluding these tests, Schmitt took a portable breath test, which yielded a result of .143. Trooper Westerfield then arrested Schmitt for DUI and took him to the patrol post, where Schmitt refused to submit to a breathalzyer test. Thereafter, Schmitt was indicted by the Mercer County grand jury for a felony DUI in violation of Revised Code section 4511.19(A)(1), having previously been convicted of three DUI offenses within the last six years.
{¶ 3} On August 13, 2001, Schmitt pleaded not guilty to the charge and subsequently filed a motion to suppress all testimony at trial relative to the field sobriety tests on October 12, 2001. The trial court set the matter for a hearing to be held on November 14, 2001. At the hearing, counsel for both the State and Schmitt presented evidence in the form of joint exhibits and a written stipulation that the field sobriety tests in question were not performed in strict compliance with the standardized testing procedures as set forth in the National Highway Traffic Safety Administration ("NHTSA") Manual. Neither side presented actual witness testimony. The trial court granted the motion to suppress, finding that the performance by the defendant of the field sobriety tests was not admissible at trial, through a written judgment entry on December 24, 2001. This appeal followed, and the State now asserts two assignments of error.
 {¶ 4} "IN ORDER FOR THE RESULTS OF THE FIELD SOBRIETY TEST TO SERVE AS EVIDENCE OF PROBABLE CAUSE TO ARREST, THE POLICE MUST HAVE ADMINISTERED THE TESTS IN STRICT COMPLIANCE WITH STANDARDIZED TESTING PROCEDURES."
 {¶ 5} "ANY EXTENSION OF THE OHIO SUPREME COURT SYLLABUS IN STATE V. HOMAN SHOULD BE LIMITED TO EXCLUDING THE CONCLUSION OR STATISTICAL RESULTS OF THE TESTS, NOT THE ACTUAL EVIDENCE, FACTS, OR CONDUCT WITNESSED BY THE PEACE OFFICER."
{¶ 6} As these two assignments of error are related, they will be addressed together.
{¶ 7} We begin our discussion of this assignment of error by noting that "the decision of whether or not to admit evidence rests in the sound discretion of the court and will not be disturbed absent an abuse of that discretion." Wightman v. Consolidated Rail Corp. (1999),86 Ohio St.3d 431, 437 (citing Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299); see also State v. Sage (1987),31 Ohio St.3d 173, 182. Thus, this Court will not disturb the trial court's decision unless it is unreasonable, arbitrary, or capricious. In the case sub judice, the trial court found that Schmitt's performance of the field sobriety tests was not admissible because of the inherent unreliability of the tests, which the State stipulated were not conducted in strict compliance with the NHTSA standards. Therefore, the court found that the danger of unfair prejudice to Schmitt outweighed any probative value that his performance of these tests might have.
{¶ 8} In making its determination to exclude the evidence at issue, the trial court relied upon a recent decision by the Ohio Supreme Court: State v. Homan (2000), 89 Ohio St.3d 421. In Homan, the Court held that "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures. Id. at paragraph one of the syllabus. The Court reasoned "that the reliability of field sobriety test results does indeed turn upon the degree to which police comply with standardized test procedures."Id. at 425 (citations omitted). In addition, the Court found that "[t]he small margins of error that characterize field sobriety tests make strict compliance critical." Id. The Court further held that the critical nature of strict compliance applied not only to the HGN test but equally applied to the walk-and-turn test and the one-leg-stand test. Id.
{¶ 9} While Homan is not entirely dispositive of this case, as its holding was limited to determinations of probable cause, we find that the rationale of the Court in reaching its decision is applicable to the facts of this case. In the case sub judice, the State stipulated that the field tests conducted by Trooper Westerfield did not strictly comply with the standards established by the NHTSA. In so doing, the State effectively stipulated that the tests were unreliable. When evidence such as this has been deemed inherently unreliable, as the Ohio Supreme Court determined it to be in Homan, the danger of unfair prejudice to a defendant is present. Therefore, a trial court is well within its discretion in excluding such evidence, as Homan implicitly mandates such a result.
{¶ 10} This court is aware of the recently published decision of the Lima Municipal Court in State v. Koeppel (2002), 117 Ohio Misc.2d 1, in which certain observations of the arresting officer, made during a "walk and turn" field sobriety test, were deemed admissible at trial, notwithstanding the court's determination that the test was not administered in strict compliance with the NHTSA procedures, and, therefore, could not be used in determining whether the officer had probable cause to arrest the defendant. Id. at 4-5. In that case, the court distinguished field tests that are based upon scientific theory outside the lay expertise of a jury such as the HGN test, where the possibility of misleading the jury is great if improperly administered, and the observations of a police officer relating to basic psychomotor skills, such as displayed in walk-and-balance tests, which are akin to other physical indicators such as bloodshot eyes, slurred speech or staggering, normally considered to be within the common experience of police officers to testify about and of jurors to understand.
{¶ 11} Thus, in terms of the reliability standard set forth in theHoman decision, the rational underlying the Koeppel decision would be that certain behavior of a suspect during a "walk-and-turn" field test would display inherently reliable indicators of alcohol influence (subject to rebuttal evidence and cross-examination), even where the test itself was found not to comply with NHTSA standards. Specifically, proponents of "selective" admissibility, as expressed in Koeppel, supra, would interpret Homan as allowing the trial court to separate unreliable test results from test performance, excluding both from the probable cause determination, but excluding only the test results (presumably meaning the officer's description of the test protocol and/or conclusion testimony about failing the test) at trial. On the other hand, an officer's observations of the suspect's performance of such a test would come before the jury at trial, provided the conduct displays independently reliable or commonly recognized indicators of alcohol influence.
{¶ 12} There is a certain appeal to this reasoning. After all, we routinely allow police officers to testify as to slurred speech, odor of alcohol, glassy eyes, and awkward physical reactions as indicators of alcohol influence, both for probable cause and at trial, without conducting any field test. However, we also see a number of difficulties with this approach. For one, despite the inherently demonstrable quality of some psychomotor activities for indicating that a person is under the influence of alcohol, the Supreme Court of Ohio, together with the NHTSA, have separately classified that conduct when it takes place in the course of administering a recognized field test and have assigned specific legal consequences to the failure to administer that test properly. One of these consequences is that the test itself is deemed legally unreliable, and another is that it shall be excluded from the determination of probable cause. Homan, supra.
{¶ 13} Additionally, we question the wisdom of allowing case law to evolve in this area based entirely upon the efforts of individual trial courts to separate prejudicial evidence of unreliable test results from evidence of a suspect's performance on the same test, on a case-by-case basis. For example, if the test is being improperly conducted by the police officer, the suspect may well be engaging in specific acts that are not uniformly accurate indicators of alcohol influence. At the same time, the suspect may blurt out verbal responses to improper commands or engage in other extraneous behavior during a test. In each such case, the trial court would then be called upon to determine whether the conduct was or was not sufficiently related to the improper command to be independently reliable or perhaps whether, but for being asked to perform the improper act, the conduct would have occurred at all. In short, we are not convinced that when multiplied throughout the appellate district, these are the sort of determinations that are likely to assist this court in promoting a single, consistent, and fair approach to these cases.
{¶ 14} Finally, we are not convinced that suppression of test results for failure to comply with NHTSA standards merely for purposes of a probable cause determination, while admitting the same test performance at trial, comports with any sound principle for governing the admission of evidence in criminal cases. Specifically, the State has not directed us to any authority or other example whereby improperly gathered evidence in a criminal case would be so unreliable as to require suppression for purposes of evaluating the arrest but be perfectly admissible for use at trial in the State's case in chief as evidence of guilt.
{¶ 15} In sum, it seems to us that if the results of an improperly conducted test are deemed unreliable under the Homan decision, then theconduct of a suspect during that test must be considered inherently unreliable as well. Moreover, if such conduct is deemed unworthy as a matter of law for a police officer to rely upon in determining probable cause under the Homan decision, we are not persuaded that the same conduct should become worthy for the jury to consider and quite possibly rely upon in determining guilt beyond a reasonable doubt at trial.[1]
{¶ 16} For the foregoing reasons, it is our determination that the better construction of the Homan decision is that where a recognized NHTSA field test is conducted in a manner that fails to comply with NHTSA standards, the reliability of the entire test process is called into question. In this case, as noted earlier, the State effectively stipulated to the noncompliance and, hence, to the unreliability of the field tests. As a result, all evidence obtained against Schmitt by the State during these tests should have been considered unreliable and excluded, both for purposes of reviewing probable cause to arrest and from the State's case in chief at trial. As this was the ruling of the trial court in this case, the assignments of error are overruled and the judgment of the Common Pleas Court of Mercer County is affirmed.
Judgment affirmed.
BRYANT, J., concurs.
HADLEY, J., dissents.
[1] We are aware that in reaching the Koeppel decision, the Lima Municipal Court cited our decision in State v. Matson (Nov. 27, 2001), Seneca App. No. 13-01-09, 2001 WL 1504190, in support of its ruling. We believe Matson is distinguishable from the case before us in that our holding in Matson was primarily directed to whether the defendant was prejudicially deprived of the opportunity to present a full defense at trial in that case. However, to the extent that the Matson opinion could be interpreted as implicitly authorizing the approach taken in theKoeppel decision, we expressly overrule the Matson decision today.