The STATE of Ohio

v.

DePOMPEI.

2002-Ohio-3705.]

Medina Municipal Court, Ohio.

No. 01 TRC 03542.

Decided June 25, 2002.

Sharlene A. Zee, Medina City Prosecutor, for plaintiff.

Thomas J. Morris, for defendant.

DALE H. CHASE, Judge.

{¶ 1} This matter is before the court on defendant Edward R. DePompei's motion in limine seeking to prohibit introduction of testimony at trial with regard to standardized field sobriety tests. The defendant argues that based upon *State v. Homan* (2000), 89 Ohio St.3d 421, 732 N.E.2d 952, this court should prohibit admission of standardized field sobriety tests absent strict compliance with standardized testing procedures when these tests are sought to be introduced at trial on the merits.

{¶ 2} This court was awaiting a decision on this identical issue on appeal in *State v. Kerr*, No. 00TRC17092. On May 1, 2002, the court of appeals declined to reach the merits of this issue. See *State v. Kerr*, 9th Dist. No. 3205–M, 2002–Ohio–2095, 2002 WL 971769.

{¶ 3} *State v. Homan* held: "In order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures."

{¶ 4} The Supreme Court referred to the National Highway Traffic Safety Administration Student Manual in its decision and quoted from the manual but did not quote the preface to the manual.

{¶ 5} The preface to the NHTSA manual states: "The procedures outlined in this manual describe how the standardized field sobriety tests are to be administered under ideal conditions. We recognize that the SFSTs will not always be administered under ideal conditions in the field because such ideal conditions will not always exist. Even when administered under less than ideal conditions, they will generally serve as valid and useful indicators of impairment. Slight variances from the ideal, i.e., the inability to find a perfectly smooth surface at roadside, may have some effect on the evidentiary weight to be given to the results. However, this does not necessarily make the SFSTs invalid."

{¶ 6} Even in the face of that preface to the NHTSA manual, the Supreme Court held that these test results were not admissible at a probable cause hearing unless they were done in strict compliance with standardized testing procedures.

{¶ 7} This decision by the Supreme Court states a rule of evidence applicable only to a motion to suppress. It does not state a rule applicable at trial. Judge Rocco, sitting by assignment in this case, issued a concurring opinion, which stated: "I would extend the court's holding here to explicitly state that field sobriety test results are admissible at trial only if the officer strictly complied

with standardized testing procedures." The Supreme Court did not extend its holding to admissibility at trial.

{¶ 8} The NHTSA manual indicates that in late 1975, research was conducted to determine which roadside sobriety tests were most accurate. NHTSA evaluated six tests that were generally used across the country. NHTSA stated that laboratory research indicated that three of these tests when administered in a standardized manner were a highly accurate and reliable battery of tests for distinguishing BACs above 0.10, which is the statutory minimum in Ohio for a breath-alcohol reading. NHTSA indicated that those three tests were the horizontal gaze nystagmus test, the one-leg stand test, and the walk-and-turn test. NHTSA found from laboratory tests that a combination of these tests was highly reliable in identifying subjects whose BACs were above 0.10, and it stated the results of the study unmistakably validated the SFSTs.

{¶ 9} NHTSA indicated that this battery of tests was reliable 93 percent of the time in a Colorado test, 95 percent of the time in a Florida test, and 91 percent of the time in a San Diego test, which were done based on a BAC of .08, which is standard in much of the country.

{¶ 10} In bold print on page VIII–3 in the manual, NHTSA stated: "**It is necessary to emphasize this validation applies only when: The tests are administered in the prescribed, standardized manner; The standardized clues are used to assess the suspect's performance; The standardized criteria are employed to interpret that performance; If any one of the standardized field sobriety test elements is changed, the validity is compromised.**"

{¶ 11} This sentence was directly quoted by the Supreme Court in the *Homan* decision as the rationale for its decision. However, the "validity" to which NHTSA referred was the "validity" of indicating a BAC in excess of either .10 or .08, not the "validity" of making a decision as to when an individual is under the influence of alcohol. In Ohio, you can be convicted of being under the influence of alcohol when your test result is above or below .10 or whether you have had any test result at all.

{¶ 12} The NHTSA manual examines the way in which each of these tests should be done. In *Homan*, the Supreme Court stated in support of its position on strict compliance that "[i]t is neither unrealistic nor humanly impossible in the great majority of vehicle stops to have strict compliance with the procedures for doing these three tests."

{¶ 13} What does strict compliance mean? First, with regard to the HGN or horizontal gaze nystagmus test, the NHTSA manual specifies the procedures for testing.

{¶ 14}   The manual states that if the suspect is wearing eyeglasses, they should be removed.   Then, on page VIII–7, the manual states that the suspect should be given the following instructions from a safe position: "I am going to check your eyes.   Keep your head still and follow this stimulus with your eyes only.   Keep following the stimulus with your eyes until I tell you to stop.

{¶ 15}   "Position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level.   Check the suspect's eyes for the ability to track together.   Move the stimulus smoothly across the suspect's entire field of vision.   Check to see if the eyes track the stimulus or one lags behind the other. If the eyes don't track together, it could indicate a possible medical disorder, injury or blindness.

{¶ 16}   "Next, check to see that both pupils are equal in size.   If they are not, this may indicate a head injury.   Check the suspect's left eye by moving the stimulus to your right.   Move the stimulus smoothly, at a speed that requires approximately two seconds to bring the suspect's eye as far to the side as it can go.   While moving the stimulus, look at the suspect's eye and determine whether it is able to pursue smoothly.

{¶ 17}   "Now, move the stimulus all the way to the left, back across the suspect's face checking if the right eye pursues smoothly.   Movement of the stimulus should take approximately two seconds out and two seconds back for each eye.   Repeat the procedure.

{¶ 18}   "After you have checked both eyes for lack of smooth pursuit, check the eyes for distinct nystagmus at maximum deviation beginning with the suspect's left eye."

{¶ 19}   Then, "next check for onset of nystagmus prior to 45 degrees."   Strict compliance with this procedure would mean that if the officer did not do the left eye first but did the right eye first and then the left eye, that could be found not to be strict compliance, and would invalidate the test.

{¶ 20}   If the officer testified that he held the stimulus 10 inches as opposed to 12 to 15 inches, that might not be strict compliance, and would arguably invalidate the test.

{¶ 21}   If the officer does a test for nystagmus prior to 45 degrees before doing a test for maximum deviation, that could invalidate the test.

{¶ 22}   The walk-and-turn test has instructions in the NHTSA manual also. First, the instructions state that the suspect should assume the heel-to-toe stance by giving the following verbal instructions accompanied by demonstrations: "Place your left foot on the line, real or imaginary," and then demonstrate that. The instructions want the officer to demonstrate.   "Place your right foot on the line ahead of the left foot with the heel of the right foot against the toe of the left

foot. Place your arms down at your sides. Keep this position until I tell you to begin. Do not start to walk until told to do so. Do you understand the instructions so far?"

{¶ 23} Then the instructions state to explain the requirements using the following verbal instructions accompanied by demonstrations. They go through the verbal instructions that they want someone to give for the walk-and-turn test. They give an instruction on test conditions, at page VIII–12: "Walk-and-turn test requires a designated straight line [this is after they have already said it can be real or imaginary earlier in this description] and should be conducted on a reasonably dry, hard, level, nonslippery surface. There should be sufficient room for suspects to complete nine heel-to-toe steps. Note: Recent field validation studies have indicated that varying environmental conditions have not affected a suspect's ability to perform the test. The original research indicated that individuals over 65 years of age, or with back, leg, or middle ear problems had difficulty performing this test. Individuals wearing heels more than two inches high should be given the opportunity to remove their shoes."

{¶ 24} The Supreme Court said that it was neither unrealistic nor humanly impossible in the great majority of vehicle stops to do these tests in strict compliance with the NHTSA regulations, even though in the description and test conditions the NHTSA manual states that varying environmental conditions have not affected the ability to perform the test. It is obvious to everyone that DUI arrests are often made on rolling streets or highways that go up and down, that these tests are performed on the road with traffic going by or nearby on the berm, that they are often administered at night with not the best lighting, and that sometimes it is raining, yet any one of those things could be interpreted as not being in strict compliance with a "dry, hard, level, nonslippery surface" and could cause the test results to be thrown out entirely, not just invalidated, or cause someone to challenge the weight of the evidence.

{¶ 25} The one-leg stand test is next. The NHTSA manual goes through the verbal instructions to be given, and based on the strict compliance standard from the Supreme Court, if there is deviation from the verbal instructions, that would not be strict compliance with these tests and would mean that the results would be thrown out.

{¶ 26} Again, the instructions state for test conditions a reasonably dry, hard, level, and nonslippery surface, and they talk about individuals over 65, people overweight by 50 or more pounds, and individuals with heels. If persons can demonstrate that they are more than 50 pounds overweight, does that invalidate the test?

{¶ 27}   We have that entire battery of criteria that has been highlighted and referred to in the NHTSA manual as the way in which strict compliance would have to be done.

{¶ 28}   How have other states around the country reviewed this issue?

{¶ 29}   There are 10 states that have dealt with this issue.  Ohio is the only state that has ruled that the tests are not admissible absent strict compliance. All the other states have essentially ruled that failure to strictly comply does not affect admissibility but goes to the weight to be given to these tests.  *Florida v. Meador* (Fla.App.1996), 674 So.2d 826, dealt with the psychomotor tests, not the HGN test.  The court said: "The mere fact that the NHTSA studies attempted to quantify the reliability of the field sobriety tests in predicting unlawful BACs does not convert all of the observations of a person's performance into scientific evidence.  The police officer's observations of the field sobriety exercises, other than the HGN test, should be placed in the same category as other commonly understood signs of impairment."  See, also, *Pennsylvania v. Ragan* (1995), 438 Pa.Super. 505, 652 A.2d 925, appeal denied, 541 Pa. 650, 664 A.2d 540 (SFSTs are "observations of common experience"); *Illinois v. Sides* (1990), 199 Ill.App.3d 203, 145 Ill.Dec. 160, 556 N.E.2d 778 (appropriate for the jury to consider "defendant's ability to perform the simple physical tasks which comprise the field sobriety tests"); *Wisconsin v. Curran* (App.1996), 207 Wis.2d 645, 559 N.W.2d 925, 1996 WL 726641; *In re Refusal of Drew* (App.1998), 217 Wis.2d 291, 577 N.W.2d 388, 1998 WL 65492; *Dunn v. Woodman* (App.1999), 230 Wis.2d 749, 604 N.W.2d 35, 1999 WL 718504 (lay opinion); *Wautoma v. Wehe* (App.1999), 229 Wis.2d 736, 600 N.W.2d 56, 1999 WL 497098; *Georgia v. Pastorini* (1996), 222 Ga.App. 316, 474 S.E.2d 122 (weight of evidence); *Cantwell v. Georgia* (1998), 230 Ga.App. 892, 497 S.E.2d 609 (officer as lay witness, cross-examination on SFSTs restricted); *Cann–Hanson v. Georgia* (1996), 223 Ga.App. 690, 478 S.E.2d 460; *Hawkins v. Georgia* (1996), 223 Ga.App. 34, 476 S.E.2d 803 (SFSTs "are physical dexterity exercises that common sense, common experience * * * show are performed less well after drinking alcohol"); *Cloud v. Texas* (Tex.App.2000), No. 03-99-00165-CR, 2000 WL 719405 ("the walk-and-turn, alphabet recital and finger dexterity tests—are not based on any novel scientific theory * * * and are barely distinguishable from lay observation of undirected behavior"); *Hawaii v. Toyomura* (1995), 80 Hawaii 8, 904 P.2d 893; *Smith v. Wyoming ex rel. Wyoming Dept. of Transp.* (2000), 11 P.3d 931.

{¶ 30}   Before the *State v. Homan* decision, the above was generally the perception of the Ohio Supreme Court and the Ohio court of appeals with regard to field sobriety testing: SFSTs were commonly understood signs of impairment that anyone would notice or observe in the common understanding of humankind.

{¶ 31} The *Homan* decision is based upon a false premise. The Supreme Court accepted the false premise that the NHTSA standards for these three field sobriety tests were designed to determine probable cause to arrest for operating a vehicle under the influence of alcohol. The NHTSA manual and all the research done by NHTSA goes only to the likelihood that this combination of tests would indicate an individual with a BAC in excess of .10. The NHTSA studies were not designed to determine whether a person is under the influence of alcohol.

{¶ 32} Reliability of a test is not the same as relevance, and in this case the motion in limine to preclude these tests asks me to do two things. It asks me to extend the Supreme Court's ruling to trial when the Supreme Court specifically had an opportunity to do that and did not, and it asks me to hold that absent a demonstration of precise compliance with the NHTSA manual, these tests are not admissible at a trial of the merits of the issue of being under the influence of alcohol. The *Homan* decision states that if they are not done in strict compliance they cannot be used to establish probable cause, but probable cause to arrest is never an issue at trial on the merits. The issue at trial on the merits is whether the state can prove beyond a reasonable doubt each of the elements of the offense, not whether the state had probable cause to make an arrest.

{¶ 33} A trial on the merits of a criminal case can proceed even without probable cause to have made an arrest if the issue was never challenged prior to trial. The state does not have to show probable cause at a trial on the merits either to a judge or to a jury.

{¶ 34} Based on that analysis of the *State v. Homan,* and based on the review of the NHTSA manual and its applications, this court finds that the motion in limine asks me to extend a ruling that was specifically not extended and to make a ruling on relevance that really is an issue of the weight to be given these tests.

{¶ 35} If it can be demonstrated at a trial that the tests were not performed in strict compliance with these standards, that demonstration should go to the weight that the jury or the trier of fact gives to the tests. It should not preclude the admissibility of the officer's testifying as to what he observed when the defendant performed these tests.

{¶ 36} In support of this decision I propose the following example. If an officer stops someone for operating a vehicle under the influence of alcohol and has the suspect come to the side of the road to perform these tests and an individual who is walking past when this happens stops to watch the suspect perform the tests, that individual can testify as to what he or she observed with regard to the arrestee's performance, and can give a lay opinion, as to whether he or she thought that the suspect was under the influence of alcohol.

{¶ 37}  The defendant asks to extend the *Homan* decision to prevent a trained police officer from giving that same opinion or describing those same tests solely because there was not strict compliance with NHTSA testing procedures.

{¶ 38}  The motion in limine is denied.

Motion denied.