OPINION
{¶ 1} Defendant-appellant, John M. Reed, Jr., appeals his conviction in the Trumbull County Court of Common Pleas on one count of Robbery, a felony of the second degree in violation of R.C. 2911.02(A)(2). For the following reasons, we affirm Reed's conviction.
 {¶ 2} At approximately 2:25 a.m., on April 7, 2004, the Warren Police Department received a 911 call from the USA Gas Mart, located at the corner of Pine Avenue and South Street, diagonally across from the police station. Mohammad Nassar, the Gas Mart clerk who made the call, reported that a man was beating a woman in the parking lot. Nassar also noticed a van that had backed into an automobile in the parking lot. Both persons eventually came inside the station and Nassar realized that the woman was, in fact, a man with shoulder-length hair. The victim of the attack asked for an ambulance and the assailant fled.
 {¶ 3} Patrolmen Ed Hetmanski and Jeffrey W. Edmundson responded to the dispatch. Edmundson drove to the Gas Mart and found Dennis Warren, Jr., the man with shoulder-length hair, wandering in the parking lot and crying. Warren told Edmundson that he had been robbed by an African-American male, later identified as Reed. According to the police report, Warren reported having between $60 and $70 and a silver watch stolen.
 {¶ 4} The dispatch reported that the assailant fled in a blue Chevrolet Corsica. From the police station, Hetmanski observed Reed driving a blue Corsica north on Pine Avenue. Hetmanski followed the Corsica to a house on Washington Street where he placed Reed under arrest. Hetmanski recovered $92 from Reed. Twenty-two dollars fell from Reed's pant leg as Hetmanski was patting him down. An additional $70 was found on the floor of the front passenger's seat of the Corsica.
 {¶ 5} Reed was indicted and found guilty, following a jury trial, of one count of Robbery. Reed was sentenced to a stated prison term of five years plus court costs and post release control. This appeal timely follows.
 {¶ 6} Reed raises the following assignments of error:
 {¶ 7} "[1.] The trial court erred, as a matter of law, by denying appellant's motion to dismiss based upon a clear violation of appellant's speedy trial rights.
 {¶ 8} "[2.] The trial court erred and abused its discretion, to the prejudice of the appellant, by failing to sanction the appellee for discovery violations and failing to grant a new trial.
 {¶ 9} "[3.] The appellant's conviction is against the manifest weight of the evidence."
 {¶ 10} In his first assignment of error, Reed argues the trial court erred by denying his motion to dismiss for violation of Ohio's speedy trial statute.
 {¶ 11} A person charged with a felony "[s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by section 2945.71 and 2945.72 of the Revised Code." R.C.2945.73(B). "[S]uch discharge is a bar to any further criminal proceedings against him based on the same conduct." R.C.2945.73(D).
 {¶ 12} For the purposes of calculating time under the speedy trial statute, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). "R.C. 2945.71[(E)] is applicable only to those defendants held in jail in lieu of bail solely on the pending charge." State v. MacDonald (1976), 48 Ohio St.2d 66, paragraph one of the syllabus; State v. Brown,64 Ohio St.3d 476, 479, 1992-Ohio-96 (citation omitted). When a defendant is held in jail for reasons other than the currently pending charges, such as a holder issued pursuant to an outstanding warrant, the triple-count provision does not apply. Id.; Statev. Keyse (Sept. 9, 1988), 11th Dist. No. 12-122, 1988 Ohio App. LEXIS 3647, at *5 ("[t]he reasoning is that if the accused would remain incarcerated even after the pending charge was dropped, the provision should not apply").
 {¶ 13} In the present case, Reed was arrested on April 7, 2004, and remained in jail until he filed his motion to dismiss on September 2, 2004. Under the triple-count provision, it was necessary to bring Reed to trial by July 6, 2004; without the triple-count provision, the State had until September 24, 2004, at the earliest, to bring Reed to trial.
 {¶ 14} At pre-trial held on August 10, 2004, the prosecutor informed the court and defense counsel that Reed was being held on a fugitive hold and, therefore, the triple-count provision did not apply to Reed. On September 2, 2004, defense counsel filed a motion to dismiss on the grounds that Reed had been held in jail for 156 days. The State filed its response the following day attaching two faxes received by the Trumbull County Jail, dated April 7, 2004, and August 31, 2004, indicating that Reed was under indictment on two counts of receiving stolen property in Ottawa County.
 {¶ 15} Reed's motion was argued before the court on September 7, 2004, the first day of trial proceedings. At this time, Reed presented a document, dated on April 27, 2004, indicating that the receiving stolen property charges had been dismissed. The trial court denied Reed's motion. The court concluded that it had not been clearly shown that the charges had been dismissed and noted that the most recent document, the August 31, 2004 fax, evidenced a valid "holder" on pending charges in Ottawa County. Cf. Keyse, 1988 Ohio App. LEXIS 3647, at *6 ("[a] holder or detainer has been defined as an informal request for the custody of person already lawfully detained") (citation omitted).
 {¶ 16} On appeal, Reed argues that the trial court "merely accepted" the State's assertion that the holder was valid and that the record is devoid of any evidence to support the State's assertion. We disagree.
 {¶ 17} The Trumbull County Jail was notified of these charges on the day of Reed's arrest. The document produced by Reed was dated April 27, 2004. As of August 31, 2004, the date of the prosecution's second fax, the Ottawa County Sheriff's Office was requesting that Reed be held on these charges. Reed did not introduce evidence challenging the validity of the second hold request received by the Trumbull County Jail. The issue of whether Reed was being held pursuant to a valid holder is a factual issue that the trial court resolved in the State's favor. Since competent and credible evidence existed to support the trial court's decision, this court will not reverse that decision. See State v. Evans, 11th Dist. No. 2003-T-0132,2005-Ohio-1787, at ¶ 32 (a trial court's factual determinations relative to a motion to dismiss on speedy trial grounds will only be reversed if "clearly erroneous") (citation omitted).
 {¶ 18} The Ohio Supreme Court has held that "[a] trial court must, upon the defendant's request, state essential findings of fact in support of its denial of a motion to discharge for failure to comply with the speedy trial provisions of R.C. 2945.71." Bryan v. Knapp (1986), 21 Ohio St.3d 64, 65; Crim.R. 12(E). However, before this duty to issue findings of fact attaches, "there must be request from the defendant." Brown,64 Ohio St.3d at 481. In the absence of such a request, "an appellate court errs in reversing a conviction on the ground that the defendant was denied a speedy trial if there is sufficient evidence demonstrating that the trial court's decision was legally justified and supported by the record." Id. at 482.[1]
 {¶ 19} Reed's first assignment of error is without merit.
 {¶ 20} Under the second assignment of error, Reed argues that the trial court erred by failing to sanction the State and/or grant a new trial for discovery violations. Pursuant to Crim.R. 16(E)(3), a trial court has discretion to sanction a party that fails to comply with a discovery rule by excluding the material sought to be introduced as evidence or by making "any such order as it deems just under the circumstances." State v. Parson
(1983), 6 Ohio St.3d 442, 445 (a trial court's decision regarding the imposition of sanctions for discovery violations is reviewed under an abuse of discretion standard).
 {¶ 21} Reed argues that the State violated the discovery rules by not providing defense counsel with the State's witness list until the "eve of trial." We disagree.
 {¶ 22} In the discovery materials provided to Reed prior to trial, the State identified three witnesses, the victim Dennis Warren and Patrolmen Edmundson and Hetmanski. The State also made available for inspection "all documents and tangible objects" material to the charges against Reed. These included the 911 tape, the watch, and photographs of the bills recovered from Reed. On Friday preceding the beginning of the trial, the State supplemented this discovery with an additional three witnesses: Michael Pratt, the 911 dispatcher; Detective Geoffrey Fusco, in charge of the Warren Police Department's evidence room; and Gas Mart attendant Mohammad Nassar.[2]
 {¶ 23} The trial testimony of Pratt and Fusco was ancillary to the admission of the 911 tape and the other physical evidence, essentially the money recovered from Reed, entered into evidence. The purpose of their testimony was to authenticate and to establish a chain of custody. Accordingly, defense counsel cannot claim surprise that these witnesses were called to testify and could have easily anticipated that the State would present some witnesses for the purpose of laying a foundation for the admission of the State's physical evidence. State v. Shade
(1996), 111 Ohio App.3d 565, 566 ("[b]ecause the defense was not surprised or prejudiced in any way by the state's failure to disclose a `chain of custody' witness, * * * the trial court abused its discretion in imposing the harshest of sanctions[, i.e., excluding the evidence]").
 {¶ 24} Nassar's testimony, however, was that of an eyewitness to the crime for which Reed was charged. As such, the State should have made this witness available to defense counsel with sufficient time for defense counsel to investigate the witness. Regardless of whether the State willfully withheld Nassar's name as a witness until shortly before trial, Reed cannot show that he was prejudiced by Nassar's testimony. State v. Joseph,73 Ohio St.3d 450, 458, citing Parson, 6 Ohio St.3d at 445
("[p]rosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect").
 {¶ 25} Nassar testified that he observed a man beating a woman in the parking lot; that he called 911; that he realized that it was two men fighting after they entered the gas station; that one of the men asked for an ambulance and that the other man fled. This testimony is completely consistent with Reed's own trial testimony, as well as that of the victim, Warren. Reed testified that, once he started fighting with Warren: "I knocked him down. * * * When he got knocked, when I had him, I had him by his ponytail and by his jacket. * * * I slung him like that. I threw him like that. He went over on the ground." Reed testified that he fled when he learned the police were coming because he was driving without a license and had drugs in his possession. The critical events for the purposes of determining Reed's guilt occurred prior to the actual physical confrontation between Reed and Warren. Nassar did not testify to anything that occurred prior to the physical confrontation between Reed and Warren. Therefore, Reed was not prejudiced by Nassar's testimony.
 {¶ 26} Reed's second assignment of error is without merit.
 {¶ 27} In the final assignment of error, Reed argues that his conviction is against the manifest weight of the evidence. A challenge to the manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. "The weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, at syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a `thirteenth juror'" and may "disagree with the factfinder's resolution of the conflicting testimony." Thompkins, 78 Ohio St.3d at 387, citingTibbs v. Florida (1982), 457 U.S. 31, 42. "The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact." Id. at 390 (Cook, J., concurring opinion).
 {¶ 28} In order to convict Reed of Robbery, the state was required to prove, beyond a reasonable doubt, that Reed, while "committing a theft offense or in fleeing immediately after the * * * offense, * * * inflict[ed] * * * physical harm on another." R.C. 2911.02(A)(2). The theft offense occurs when a person knowingly obtains or exerts control over the property of another with the purpose of depriving the owner thereof. R.C. 2913.02(A).
 {¶ 29} At trial, Reed's defense was that his involvement with Warren was the result of a drug deal. Reed testified that he had met Warren that evening at the Dairy Mart on North Park Avenue and Washington Street and that Warren had asked Reed to buy him drugs. After purchasing drugs for Warren, Reed testified that Warren followed Reed to the Gas Mart because Reed needed to make change to give to Warren. According to Reed, the physical altercation with Warren occurred because Warren hit Reed's car with his van in the Gas Mart parking lot. Reed denied taking any money from Warren.
 {¶ 30} Contrary to Reed's testimony, Warren testified that he did not know Reed and had not seen him prior to their meeting at the Gas Mart. Warren testified that Reed approached him asking for money and, then, grabbed the money out of his wallet. Warren testified that he backed his van into Reed's car in an attempt to prevent Reed from fleeing.
 {¶ 31} In reaching its verdict, the jury necessarily had to decide whether Reed or Warren was the more credible witness. The jury chose to believe Warren and we will not disturb that judgment. Reed describes Warren's testimony as "incredible." Reed points out that there were discrepancies in Warren's testimony regarding the amount of money that was stolen. Reed also points out that Warren testified to buying cigarettes and drink at the Dairy Mart and, then, inexplicably, driving to the Gas Mart to buy gas. While these arguments may lead one to question Warren's testimony, they do not discredit that testimony.
 {¶ 32} Reed's testimony contained its own discrepancies. Reed testified that he needed to make change to give Warren. But Reed did not say that he sold Warren the drugs, only that he acted as a runner. As a runner, there was no reason why Reed should have to make change. Reed testified that Warren had given him a $50 bill and that he had bought Warren $30 worth of crack from a house on Porter Street. Inexplicably, Reed testified that he needed a $5 bill to make change for Warren. Moreover, police recovered two $20 bills from Reed which would have covered the change he allegedly owed Warren.
 {¶ 33} There was other evidence tending to impeach Reed's credibility such as the fact that Reed fled after the police were summoned, that the money the police recovered from Reed was found on the floor of his vehicle and in his pant leg, and that, upon arrest, Reed provided police a false name and social security number.
 {¶ 34} For the foregoing reasons, the jury's verdict was not against the manifest weight of the evidence. Reed's third assignment of error is without merit.
 {¶ 35} Reed's conviction on one count of Robbery is, hereby, affirmed.
O'Toole, J., concurs in judgment only,
O'Neill, J., dissents with a Dissenting Opinion.
[1] We note that Reed did not object to the introduction of the unverified copies of the fugitive hold introduced by the State and only challenged the existence of the fugitive hold by introducing equally unverified hearsay evidence. In the absence of a defense objection or request for findings of fact, we will not hold the trial court's consideration of the State or Reed's evidence to be error. Brown, 64 Ohio St.3d at 481 ("a trial court's failure to place of record [sic] the findings of fact essential to its disposition of a motion will not provide a basis for reversal on appeal in the absence of a timely request for such findings"); Crim.R. 12(H) ("[f]ailure by the defendant to raise * * * objections * * * that must be made prior to trial * * * shall constitute waiver of the * * * objections").
[2] The State's claim that it provided supplemental discovery "four full days before the trial began" is exaggerated. The record demonstrates that the supplemental discovery was hand-delivered to defense counsel's office late on the afternoon of Friday, September 3, 2004. The following weekend was Labor Day weekend. Defense counsel could not have reasonably been expected to actually receive this discovery until the morning of Tuesday, September 7, the day trial proceedings began.