{¶ 1} Appellant Adam E. Johnson appeals a judgment of the East Liverpool Municipal Court overruling a motion to suppress. Appellant was charged with operating a motor vehicle while intoxicated (OMVI), driving left of center, and driving with a suspended license. Appellant argues that the field sobriety tests performed after the traffic stop were not done properly and that the arresting officer's testimony concerning those tests should have been suppressed. The record shows that the field sobriety tests were conducted properly, and even if there had been some error in the tests the officer would have been permitted to testify as to the facts and circumstances surrounding those tests as evidence of intoxication. Appellant has failed to demonstrate any error in the field sobriety tests, and therefore, the judgment of the trial court is affirmed.
 FACTS AND PROCEDURAL BACKGROUND {¶ 2} On May 6, 2005, Patrolman Ronald Woolf of the Liverpool Township Police Department observed a vehicle on State Route 267, near Ada Street in East Liverpool, traveling left of the centerline and then traveling over the white fog line of the road. The driver was also continuously activating the car horn in a residential neighborhood at 4:21 a.m.
 {¶ 3} Upon initiating the traffic stop, the officer detected a strong odor of alcohol on Appellant's breath. The officer also noticed Appellant fumbling around for his car registration. The officer asked Appellant why he was honking his horn, and he said that the tachometer of the car would only work when he honked his horn. Appellant demonstrated that this was actually true.
 {¶ 4} The officer then asked Appellant to perform three field sobriety tests. He conducted the walk-and-turn test, the one-leg stand test, and the horizontal gaze nystagmus test. Appellant failed the tests, and the officer placed him under arrest and transported him to the police station. Appellant refused to take a breathalyzer test after his arrest. Appellant was charged with a third offense of operating a motor vehicle while intoxicated (OMVI). He was also charged with having an expired license and driving left of center.
 {¶ 5} On May 11, 2005, Appellant entered a plea of not guilty. On July 25, 2005, Appellant filed a motion to suppress the, "opinion and/or observations of the police officer regarding Defendant's sobriety and/or alcohol level[.]" A hearing was held on July 26, 2005. The court overruled the motion to suppress on July 26, 2005, finding that the officer substantially complied with the testing standards for administering field sobriety tests. On September 13, 2005, Appellant entered a no contest plea to one count of OMVI (third offense), and one count of driving left of center. The remaining charge was dismissed. The court sentenced Appellant to 180 days in jail, with 120 days suspended, a $750 fine, a three-year license suspension, and three years of probation. The entire sentence was "deferred" pending appeal. This timely appeal was filed on October 11, 2005.
 ASSIGNMENT OF ERROR {¶ 6} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS THE TESTIMONY/EVIDENCE OF THE ARRESTING OFFICER REGARDING THE RESULTS OF APPELLANT'S FIELD SOBRIETY TESTS AS SAME WHERE [SIC] NOT ADMINISTERED IN SUBTANTIAL [SIC] COMPLIANCE WITH THE TESTING STANDARDS AND PROCEDURES."
 {¶ 7} This appeal attempts to reverse a trial court's judgment on a motion to suppress. Appellate review of a motion to suppress presents a mixed question of law and fact. State v. McNamara (1997),124 Ohio App.3d 706, 710, 707 N.E.2d 539. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Accepting these facts as true, the appellate court conducts a de novo review of whether the facts satisfy the applicable legal standards at issue in the appeal. State v. Williams (1993), 86 Ohio App.3d 37, 41,619 N.E.2d 1141.
 {¶ 8} Appellant argues on appeal that Patrolman Woolfs testimony concerning the field sobriety tests should have been suppressed because the field sobriety tests were improperly performed. Appellant contends that field sobriety tests must comply with standards set forth by the National Highway Traffic Safety Administration (NHTSA). Appellant makes no argument that the patrolman made the arrest without probable cause, or that any other evidence should be suppressed as a result of suppressing the evidence concerning the field sobriety tests.
 {¶ 9} Appellant raised general concerns about the field sobriety tests in his motion to suppress, but there is no particular objection made to any one of the tests. The specific issues now raised on appeal were not part of the motion to suppress. In effect, Appellant is attempting to blindside the prosecution by raising a very general objection to the field sobriety tests with the trial court, and then devising a more specific objection on appeal after looking more closely at the testimony from the suppression hearing. As Crim.R. 47 states, a motion to suppress must state, "with particularity the grounds upon which it is made and shall set forth the relief or order sought." The prosecutor responded to the vague challenge to the field sobriety tests by having the arresting officer give general testimony concerning each test. "When a defendant's motion to suppress raises only general claims * * * the burden imposed on the state is fairly slight. * * * With a general motion to suppress, the state is only required to demonstrate, in general terms, that it substantially complied with the regulations. Unless the defendant raises a specific issue in a motion, specific evidence is not required."State v. Johnson (2000), 137 Ohio App.3d 847, 851, 739 N.E.2d 1249.
 {¶ 10} During cross-examination, Appellant's counsel did ask the arresting officer some specific questions about presumed NHTSA standards, but counsel did not actually provide any evidence to establish what those standards were. Now Appellant is asking this Court to suppress evidence without being able to refer to any evidence in the record establishing the standards that the officer has allegedly violated. Despite the obvious difficulty Appellant has created for us, we will attempt to review his alleged errors as much as possible.
 {¶ 11} A few comments are needed as to the current state of the law governing the standard of review of field sobriety tests. In State v.Homan, the Ohio Supreme Court ruled that field sobriety tests must be performed in strict compliance with NHTSA guidelines in order to be admissible in OMVI cases, at least with respect to proof of probable cause to arrest. "[I]t is well established that in field sobriety testing even minor deviations from the standardized procedures can severely bias the results. * * * [W]e find that strict compliance with standardized field sobriety testing procedures is neither unrealistic nor humanly impossible in the great majority of vehicle stops in which the police choose to administer the tests." State v. Homan (2000),89 Ohio St.3d 421, 426, 732 N.E.2d 952. Homan also held that probable cause for arrest is not solely dependent on the results of field sobriety tests, but rather, is determined by looking at the totality of the facts and circumstances surrounding the arrest. Id. at 427.
 {¶ 12} Homan was decided on April 26, 2000, and thus, on that date, the "strict compliance" standard was established for reviewing the use of field sobriety tests to support probable cause to arrest. The standard changed, though, when the Ohio State Legislature adopted a revised version of R.C. § 4511.19(D)(4)(b), which became effective on April 9, 2003, and now reads:
 {¶ 13} "(b) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol, a controlled substance, or a metabolite of a controlled substance in the blood, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown byclear and convincing evidence that the officer administered the test insubstantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 14} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 15} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 {¶ 16} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate." (Emphasis added.)
 {¶ 17} As is evident from the new wording of the statute, the standard for allowing the results of field sobriety tests into evidence is whether the tests were completed in "substantial compliance" with NHTSA guidelines. This marks a change from the Homan standard of "strict compliance." The Ohio Supreme Court has recognized that the holding inHoman is now of limited significance due to the statutory changes:
 {¶ 18} "Since our decision in Homan, the General Assembly has amended R.C. 4511.19. Under the amended statute, the arresting officer no longer needs to have administered field sobriety tests in strict compliance with testing standards for the test results to be admissible at trial. Instead, an officer may now testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards. Id. Consequently, we recognize that this portion of our decision will have limited applicability." (Footnote omitted.) State v.Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 9.
 {¶ 19} Most courts are once again applying the "substantial compliance" standard in reviewing whether the results of field sobriety tests should be permitted at trial. See, e.g., State v. Sunday, 9th Dist. No. 22917, 2006-Ohio-2984; State v. Thompson, 8th Dist. No. 86357,2006-Ohio-1836; State v. Brown, 166 Ohio App.3d 638, 2006-Ohio-1172,852 N.E.2d 1228. There is disagreement though, among some appellate courts as to whether the new statutory standard of "substantial compliance" is constitutional. The Ohio Supreme Court is currently reviewing the issue. See State v. Boczar, 11th Dist. No. 2004-A-0063, 2005-Ohio-6901. Regardless of the outcome of this case, though, the Ohio Supreme Court has already ruled in Schmitt that revised R.C. § 4511.19(D)(4)(b) has effectively limited the holding of Homan, and that the "substantial compliance" standard should be used in reviewing whether the results of field sobriety tests are admissible.
 {¶ 20} It should be noted that the Schmitt case distinguishes between the results of the field sobriety tests and the officer's general observations of the facts and circumstances of the tests.Schmitt held that an officer may give general lay testimony of his observations of the field sobriety tests as general evidence of whether a defendant appears intoxicated; even if the results of the tests are inadmissible:
 {¶ 21} "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated. Such lay testimony is often crucial in prosecuting drunk driving cases. Moreover, such evidence is relevant and admissible pursuant to Evid.R. 401 and Evid.R. 402. Thus, courts have recognized that '[t]o prove impaired driving ability, the state can rely on physiological factors (e.g., slurred speech, bloodshot eyes, odor of alcohol) and coordination tests (e.g., field sobriety tests) to demonstrate that a person's physical and mental ability to drive is impaired.'
 {¶ 22} "The dissenting [appellate] judge in Schmitt and the majority of the [appellate] court in Weirtz, which relied upon theSchmitt dissent, understood what constitutes appropriate lay testimony. In Schmitt, the dissenting judge, in arguing that the officer's observations should not be suppressed, explained that the 'performance of the psychomotor tests involves observations that parallel those that a layperson would make in assessing an individual's sobriety. Thus, a defendant's ability to perform such simple tasks is within the juror's common understanding.'
 {¶ 23} "The nonscientific field sobriety tests involve simple exercises, such as walking heel-to-toe in a straight line (walk-and-turn test). The manner in which a defendant performs these tests may easily reveal to the average layperson whether the individual is intoxicated. We see no reason to treat an officer's testimony regarding the defendant's performance on a nonscientific field sobriety test any differently from his testimony addressing other indicia of intoxication, such as slurred speech, bloodshot eyes, and odor of alcohol. In all of these cases, the officer is testifying about his perceptions of the witness, and such testimony helps resolve the issue of whether the defendant was driving while intoxicated.
 {¶ 24} "Unlike the actual test results, which may be tainted, the officer's testimony is based upon his or her firsthand observation of the defendant's conduct and appearance. Such testimony is being offered to assist the jury in determining a fact in issue, i.e., whether a defendant was driving while intoxicated. Moreover, defense counsel will have the opportunity to cross-examine the officer to point out any inaccuracies and weaknesses. We conclude that an officer's observations in these circumstances are permissible lay testimony under Evid.R. 701. Therefore, we answer the certified question in the negative and hold that a law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests." (Citations omitted.) Id. at ¶ 12-15.
 {¶ 25} Under the law as it now stands, the results of the field sobriety test must be shown to be in substantial compliance with NHTSA standards. The police officer's observations during those tests, on the other hand, are not required to meet any such standard and are admissible merely because they are relevant to whether the defendant is or is not intoxicated. It would be relevant if the defendant could not hold himself steady, stumbled when he walked, or fell down when he tried to stand on one foot. These are the type of facts an officer might observe during field sobriety tests. Using the standards set forth inSchmitt, there should be no reason to suppress Patrolman Woolf s testimony regarding what happened during the field sobriety tests even if the final results of those tests should have been suppressed.
 {¶ 26} Assuming arguendo that Appellant is also concerned about suppressing the results of the field sobriety tests, his first argument is that Patrolman Woolf failed to substantially comply with NHTSA guidelines because he did not know the number of clues of intoxication that he was supposed to observe in the walk-and-turn and one-leg stand tests. Appellant has not provided any support for his argument that an officer's mistake as to the possible number of clues that could be found for each test invalidates the results of the tests. Appellant does not argue that the officer failed to observe the requisite number of clues for each test. There is no dispute that Appellant exhibited most of the clues of intoxication for the walk-and-turn test. Appellant could not keep his balance during the test instructions, failed to touch his heal to his toe on any step, stopped to regain his balance, took an incorrect number of steps, and lost his balance while turning. For the one-leg stand test, Appellant attempted to do the test a number of times, but could not complete it. Whether Patrolman Woolf knew of or did not know of other clues that would have established that Appellant failed the tests, the clues that the officer did know were enough to show that Appellant was intoxicated.
 {¶ 27} As far as the horizontal gaze nystagmus test is concerned, Appellant would have this Court accept as fact counsel's assertions at the suppression hearing regarding NHTSA standards. It is axiomatic that counsel's arguments, comments and assertions during trial are not to be treated as evidence. State v. Tumbleson (1995), 105 Ohio App.3d 693,700, 664 N.E.2d 1318. Therefore, we cannot accept counsel's statements at trial as proof of what the NHTSA standards were or proof that the standards were not met.
 {¶ 28} Appellant further argues that the officer did not know how to conduct the "smooth pursuit" aspect of the horizontal gaze nystagmus test and failed to conduct it properly. " 'Horizontal gaze nystagmus' refers to a jerking of the eyes as they gaze to one side. * * * In administering the test, an officer takes some object, a pen for example, and places it approximately twelve to fifteen inches in front of the suspect's nose. The officer then observes the suspect's eyes as they follow the object to determine at what angle nystagmus occurs. The more intoxicated a person becomes, the less the eyes have to move toward to the side before nystagmus begins." Homan, supra,89 Ohio St.3d at 421-422, fn.1.
 {¶ 29} Appellant's counsel apparently tried to establish at the suppression hearing that the "smooth pursuit" part of the test required the officer to smoothly move a stimulus for two seconds towards the right, hold it there for two seconds, and then slowly move the stimulus to the left for two seconds. A recently reported Ohio Municipal Court case quotes the NHTSA manual concerning this part of the test:
 {¶ 30} "Then, on page VIII-7, the manual states that the suspect should be given the following instructions from a safe position: 'I am going to check your eyes. Keep your head still and follow this stimulus with your eyes only. Keep following the stimulus with your eyes until I tell you to stop.
 {¶ 31} " 'Position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level. Check the suspect's eyes for the ability to track together. Move the stimulus smoothly across the suspect's entire field of 12-vision. Check to see if the eyes track the stimulus or one lags behind the other. If the eyes don't track together, it could indicate a possible medical disorder, injury or blindness.
 {¶ 32} " 'Next, check to see that both pupils are equal in size. If they are not, this may indicate a head injury. Check the suspect's left eye by moving the stimulus to your right. Move the stimulus smoothly, at a speed that requires approximately two seconds to bring the suspect's eye as far to the side as it can go. While moving the stimulus, look at the suspect's eye and determine whether it is able to pursue smoothly.
 {¶ 33} " 'Now, move the stimulus all the way to the left, back across the suspect's face checking if the right eye pursues smoothly. Movement of the stimulus should take approximately two seconds out and two seconds back for each eye. Repeat the procedure.' " State v.DePompei , 119 Ohio Misc.2d 41, 2002-Ohio-3705, 773 N.E.2d 626, ¶ 14-17.
 {¶ 34} There is nothing in the portion of the NHTSA manual cited above that requires the officer to hold the stimulus still for two seconds during the "smooth movement" part of the test. Appellant's counsel incorrectly described the requirements for the horizontal gaze nystagmus test, and this undoubtedly explains why Patrolman Woolf did not conduct the test as explained by counsel. (7/26/05 Tr., pp. 33-34.)
 {¶ 35} In conclusion, the transcript of the suppression hearing reveals that Patrolman Woolf substantially complied with the standards for conducting field sobriety tests, and the prosecutor provided substantial evidence to overcome the alleged errors set forth in the motion to suppress. No error has been shown in the trial court proceedings, and the judgment of the East Liverpool Municipal Court is hereby affirmed.
Vukovich, J., concurs. DeGenaro, P.J., concurs.