DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Williams County Court of Common Pleas, in which the trial court denied a motion to suppress evidence filed by appellant, Eric M. Fuller, Sr., accepted appellant's no contest plea, and found appellant guilty of one count of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2) *Page 2 
and (C)(1)(c), a second degree felony. On appeal, appellant sets forth the following as his sole assignment of error:
 {¶ 2} "I. The Trial Court should have granted the defense [sic] Motion to Suppress."
 {¶ 3} The undisputed, relevant facts are as follows. On August 16, 2006, appellant and his stepbrother, a minor, were in appellant's SUV, traveling southbound on Main Street in Bryan, Ohio. At some point, Bryan Police Officer Jason Randall noticed that the headlights on appellant's vehicle were not illuminated. Randall signaled for appellant to pull over.
 {¶ 4} When appellant stopped the vehicle, Randall approached the driver's side door and shined a flashlight on the interior. At that point, Randall noticed a glass pipe that was between the driver's side visor and a CD organizer that was strapped to the visor. Appellant was told to exit the vehicle, which he did. Randall then contacted his supervisor, Sergeant Jeremy Jones, who arrived at the scene shortly thereafter to conduct a vehicle search.
 {¶ 5} Jones' search of the vehicle revealed a glass pipe containing burnt residue, and several baggies containing a white, powdery substance. When field tests confirmed the substance was methamphetamine, Jones advised Randall to place appellant under arrest. Randall then handcuffed appellant, and placed him in the back of a patrol car. Appellant's stepbrother was placed in a separate patrol car. Jones also called for a drug dog to come and search appellant's vehicle. *Page 3 
 {¶ 6} While the dog was searching appellant's vehicle, Bryan Police Officer Christopher Chapa arrived on the scene. Chapa, a member of the Multi-Area Narcotics Unit, interviewed both appellant and his stepbrother. Appellant told Chapa the baggies contained "speed," and that he intended to sell the "speed" for money. Appellant was then transported to the Bryan Police Station, where he was interrogated further by Chapa. Once again, appellant admitted that the methamphetamine was his, and that he intended to sell the drugs.
 {¶ 7} On August 28, 2006, the Williams County Grand Jury indicted appellant on one count of trafficking in drugs in the vicinity of a juvenile, in violation of R.C. 2925.03(A)(2) and (C)(1)(c), a second degree felony. On October 10, 2006, appellant filed a motion to suppress the statements he made to Randall and Chapa, on grounds that the statements were obtained in violation of appellant's Miranda rights. Specifically, appellant asserted that he was not apprised of his constitutional rights prior to questioning at the scene of his arrest. Appellant further asserted that, although Miranda warnings were read to him prior to questioning at the police station, those warnings were insufficient as a matter of law to "cure" the errors that arose during his first interrogation.
 {¶ 8} A hearing on the motion to suppress was commenced on October 16, 2006. At the hearing, testimony was presented by Randall[1], Jones and Chapa.
 {¶ 9} Randall testified at the suppression hearing that he stopped appellant's vehicle at 10:45 p.m. on August 16, 2006, because the headlights were not on. Randall *Page 4 
further testified that when he asked appellant for his license and registration, he saw a glass pipe tucked into the visor on the driver's side of the vehicle. Randall then called for assistance, and asked appellant to exit the vehicle. Randall stated that when Jones arrived on the scene, Jones looked inside the vehicle and saw the glass pipe. Randall then handcuffed appellant, placed him in the back of a patrol car, and read appellant his Miranda rights. Randall further stated that a preliminary search of the vehicle yielded two bags containing white powder, a glass pipe, and a $100 bill, after which Jones called for a drug-sniffing dog to further search the vehicle.
 {¶ 10} On cross-examination, Randall testified that Jones told him to handcuff appellant. Randall further testified that he believed Jones was close enough to overhear him reading appellant his Miranda rights in the back of the patrol car. Randall stated that appellant indicated he understood his rights, after which Chapa interviewed appellant while appellant was still in the vehicle. Randall further stated that his written report of the incident did not say which officer read appellant his rights at the scene of the arrest.
 {¶ 11} Jones testified at the hearing that he arrived at the scene "less than one minute" after Randall called for assistance. Jones further testified that he saw the bowl end of a glass pipe in appellant's visor and, when he pulled the pipe out of the vehicle, he saw that it contained burned residue. Also found in the vehicle were two baggies containing white powder. Jones stated that, after finding the baggies, he notified Chapa of the arrest, and requested a drug dog to further search the vehicle. Randall then placed appellant under arrest and Jones patted him down. The pat down search produced more baggies of the white substance, $100 in cash, and a knife. *Page 5 
 {¶ 12} On cross-examination, Jones testified that he was standing "out between the cars" making calls for assistance, when he overheard Randall reading appellant his rights while appellant was in the back seat of the cruiser. Jones further testified that he saw Chapa advising appellant's stepbrother of his Miranda rights. Jones stated that he spoke to Chapa about appellant's stepbrother; however, Jones did not talk to Chapa about appellant. Jones further stated that he gave the investigation over to Chapa because Chapa investigates drug cases in the area.
 {¶ 13} Chapa testified at the hearing that, at the time of appellant's arrest, he was a Bryan police officer assigned to the Multi-Area Narcotics Unit. Chapa further testified that he arrived at the scene 15 minutes after receiving Jones' call, while officers were still removing evidence from appellant's vehicle. Chapa stated that he spoke with appellant's stepbrother. Chapa further stated that appellant told Chapa that he had received his Miranda warnings; however, appellant proceeded to admit that he had a "bag full of speed" that was purchased from someone in nearby Ney, Ohio, which appellant was going to sell for $300. Chapa stated that appellant understood both his rights and the questions put to him by Chapa; however, appellant looked "as though he was on drugs" at the time. Chapa also stated that, when appellant was transported to the police station, he was advised that hisMiranda rights were still in effect.
 {¶ 14} On cross-examination, Chapa testified that appellant'sMiranda rights were not given while Chapa was present. However, he recalled Jones saying that both appellant and his stepbrother had been"Mirandized." Chapa then questioned the *Page 6 
stepbrother, after which he advised appellant that his Miranda rights were in effect and proceeded to question appellant in the back of the police cruiser.
 {¶ 15} At the close of Chapa's testimony, appellant's defense counsel asked for a continuance, which was granted.[2] The hearing resumed on August 16, 2007, when testimony was presented by appellant.
 {¶ 16} Appellant testified at the hearing that he was under the influence of methamphetamine when he was pulled over by Randall on August 16, 2006. He further testified that the drug pipe in his visor was not "easily seen" from outside the vehicle; however, Randall "could have seen" the pipe when he flashed a light inside the vehicle. Appellant stated that Chapa questioned him at the scene of the accident, but the officers did not read him his Miranda rights until after he was taken to the police station.
 {¶ 17} Appellant stated that he told the officers the baggies contained "speed." He further stated that he overheard Randall, Jones and Chapa arguing at the police station about which one of them read appellant his Miranda rights at the scene. Appellant admitted that his rights were read at the station, after which he again admitted that the baggies contained drugs. Appellant also stated that he repeated the incriminating statements at the station because the officers "already had the answers from before."
 {¶ 18} On cross-examination, appellant testified that, at the scene, he was not made aware of his constitutional rights. Appellant admitted that he had been a *Page 7 
methamphetamine user for one year prior to his arrest, and that he successfully lied to his wife during that time about his drug use. Appellant disagreed with Randall's testimony that his Miranda rights were read in the police cruiser. Appellant stated that he used methamphetamines only a few hours before his arrest.
 {¶ 19} At the close of appellant's testimony the trial court found "by clear and convincing evidence that the State has met its burden." The motion to suppress was denied, and appellant entered a plea of no contest. The trial court then inquired of appellant and ascertained that he was aware of the nature of the charges against him and the possible penalties involved; that he made a knowing, intelligent and voluntary waiver of his constitutional rights; and that he understood the effect of his plea and the maximum potential penalties that could be imposed as a result. Thereafter, the trial court accepted the plea, found appellant guilty of aggravated trafficking in drugs, and ordered the preparation of a pre-sentence investigation report.
 {¶ 20} After holding a sentencing hearing, the trial court issued a "journal entry" on September 21, 2007, in which it sentenced appellant to serve two years in prison, ordered him to forfeit $1,171 found in his vehicle, and suspended his driver's license for a period of two years. A timely notice of appeal was filed in this court on September 28, 2007.
 {¶ 21} On appeal, appellant asserts in his sole assignment of error that the trial court should not have denied his motion to suppress. In support, appellant makes three separate arguments. First, appellant argues that the trial court failed to state findings of fact on the record. Second, appellant argues that the trial court's August 28, 2007 entry *Page 8 
denying his motion to suppress is not valid because it was never signed by the trial judge. Third, appellant argues that the trial court's decision is not supported by competent, credible evidence.
 {¶ 22} Appellant's second argument challenges the validity of the trial court's order. Therefore, we will address it first.
 {¶ 23} Appellant correctly states that "[a] court of record speaks only through its journal." State v. Floyd (Feb. 26, 1992), 4th Dist. No. 91CA1992, Harsha, J., concurring, citing In re Adoption of Gibson
(1986), 23 Ohio St.3d 170, 173, at fn. 3. See, also, Cleveland v.Jovanovic, 153 Ohio App.3d 37 ("In order to constitute an official court record, the entries must be signed by a judge." Id., ¶ 8, citingCleveland v. Cuebas (Nov. 17, 1994), Cuyahoga App. No. 66488. However, in this case, the trial court's record contains a signed entry, dated August 28, 2007, in which trial judge Anthony L. Gretick denied appellant's motion to suppress. Accordingly, appellant's claim that the record does not contain a valid, signed entry is without merit.
 {¶ 24} As to appellant's first argument, pursuant to Crim.R. 12(F), in cases "[w]here factual issues are involved in determining a motion [to suppress], the court shall state its essential findings on the record." However, in order to invoke the rule, the defendant must request that the court state its essential findings of fact in support of its denial of a motion. State v. Benner (1988), 40 Ohio St.3d 301, 317-318;State v. Reed, 11th Dist. No. 2004-T-0117, 2005-Ohio-6901, ¶ 18;Bryan v. Knapp (1986), 21 Ohio St.3d 64. *Page 9 
 {¶ 25} In its entry denying appellant's motion to suppress, the trial court found, "after hearing the testimony and reviewing the other evidence presented * **," that the testimony of Randall, Jones and Chapa was credible. The trial court further found that appellant "was properly mirandized prior to the time his statement was taken and that he has suffered no violation of his constitutional rights."
 {¶ 26} On consideration, we find that the trial court's entry contains sufficient findings of fact for this court's review. See State v.Ranberger (Dec. 21, 1992), 2d Dist. No. 2946. The record contains no indication that appellant made a request for additional findings of fact pursuant to Crim.R. 12(E). Accordingly, appellant's first argument is without merit.
 {¶ 27} In support of his third argument, appellant asserts that the trial court's determination that he was properly advised of hisMiranda rights was against the manifest weight of the evidence. Specifically, appellant claims that there is a discrepancy in the testimony presented by Randall, Jones, and Chapa at the suppression hearing. According to appellant, Randall's claim that appellant was advised of his constitutional rights at the scene of the arrest, before he was questioned by Chapa, was "discredited" by testimony given by Jones and Chapa. In addition, appellant claims that Randall's testimony was discredited by appellant's own testimony that: (1) he was not advised of his rights prior to the initial questioning; and (2) the three officers argued at the police station over the issue of who advised appellant of his rights. We disagree, for the following reasons. *Page 10 
 {¶ 28} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the court's findings of fact if they are supported by competent, credible evidence. State v.Fanning (1982), 1 Ohio St.3d 19. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. State v. McNamara (1997),124 Ohio App.3d 706." State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.
 {¶ 29} It is well-settled that when the police take a suspect into custody, they are required to give Miranda warnings before subjecting the suspect to interrogation. State v. Gumm (1995), 73 Ohio St.3d 413,429, citing State v. Roe (1989), 41 Ohio St.3d 18, 21; Miranda v.Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602. "A suspect must be informed of his right to remain silent, that his statements may be used against him in a court of law, that he has the right to an attorney, and that if he cannot afford an attorney, one will be appointed on his behalf prior to questioning." State v. Dumas, 7th Dist. No. 06 MA 36, 2008-Ohio-872, ¶ 17, citing State v. Taylor (Mar. 23, 2001), 11th Dist. No. 99-P-0071. Statements elicited by police through custodial interrogation without informing a suspect of his Miranda rights cannot be introduced at trial as evidence of his guilt. Berkemer v. McCarty (1984), 468 U.S. 420, 428,104 S.Ct. 3138, 82 L.Ed.2d 317. *Page 11 
 {¶ 30} It is undisputed that appellant was in police custody before he was questioned by Chapa. However, as set forth above, both Randall and Jones testified that Jones was close enough to the patrol vehicle to overhear Randall advising appellant of his constitutional rights. Chapa stated that he was not present when Randall advised appellant of his rights; however, prior to any questioning, appellant indicated that he had been advised of his rights and wanted to speak to Chapa.
 {¶ 31} A discrepancy in the three officers' accounts arises from Chapa's testimony that Jones told him appellant had been advised of his rights, which was contradicted by Jones's testimony that he did not recall speaking to Chapa concerning appellant. The only other evidence contradicting the officers' testimony was appellant's uncorroborated testimony that he was not apprised of his rights at the time of his arrest, and that the officers were arguing at the police station about which one of them read appellant his rights prior to any questioning.
 {¶ 32} This court has reviewed the entire record of proceedings that was before the trial court. Upon consideration thereof, and after giving proper deference to the trial court as the trier of fact, we find sufficient competent, credible evidence to support the trial court's conclusion that appellant was properly notified of his Miranda rights, and that he waived those rights, prior to the initial questioning by Chapa. Accordingly, appellant's argument to the contrary is meritless.
 {¶ 33} Appellant's sole assignment of error is not well-taken. The judgment of the Williams County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense *Page 12 
incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] By the time of the hearing, Randall had become a Williams County Sheriffs Deputy.
[2] The continuance was granted so that appellant could negotiate a plea, whereby he could enter treatment for drug abuse in lieu of prison. However, plea negotiations were ultimately unsuccessful. *Page 1